443 F.3d 253
 Thomas DENNEY, on his own behalf and on behalf of all others similarly situated, R. Thomas Weeks, on his own behalf and on behalf of all others similarly situated, Norman R. Kirisits, on his own behalf and on behalf of all others similarly situated, TD Cody Investments, L.L.C., on their own behalf and on behalf of all others similarly situated, RTW High Investments, L.L.C., on their own behalf and on behalf of all others similarly situated, NRK Syracuse Investments, L.L.C., on their own behalf and on behalf of all others similarly situated, DKW Partners, on their own behalf and on behalf of all others similarly situated, DKW Lockport Investors, Inc., on their own behalf and on behalf of all others similarly situated, Donald A. Destefano, on his behalf and on behalf of all others similarly situated, Patricia
J. Destefano, on her own behalf and on behalf of all others similarly situated, DD Tiffany Circle Investments, L.L.C., on their own behalf and on behalf of all others similarly situated, Tiffany Circle Partners, on their own behalf and on behalf of all others similarly situated, Diamond Roofing Company, Inc., on their own behalf and on behalf of all others similarly situated, Kathryn M. Kiiristis, on her own behalf and on behalf of all others similarly situated, Jeff Blumin, JB Hilltop Investments LLC, Kyle Blumin, KB Hoag Lane Investments LLC, Michael Blumin, MB St. Andrews Investments LLC, Fayetteville Partner, Laurel Hollow Investors, Inc., on their own behalf and on behalf of all others similarly situated, OAK Tree Investments, LLC, JM Walnut Investments, LLC, JMA Sedgemoor Investments LLC, HNC Ditch Investments LLC, Carmel Partners L.P., BAMC Inc., Carol Trigilio, Jay Michener, Jeffrey M. Adams, Henry N. Camferdam Jr., Plaintiffs-Appellees,
v.
DEUTSCHE BANK AG, Deutsche Bank Securities, Inc., doing business as Deutsche Bank Alex Brown, a division of Deutsche Bank Securities, Inc., Defendants-Appellants,
Jenkens & Gilchrist, P.C., a Texas Professional Corporation, Defendant-Appellee,
BDO Seidman, L.L.P., Pasquale & Bowers, L.L.P., Cantley & Sedacca, L.L.P., Dermody, Burke and Brown, Certified Public Accountant, Paul M. Daugerdas, Paul Shanbrom, Edward Sedacca, Erwin Mayer, Donna Guerrin, Defendants,
v.
J. Scott Mattei, James E. Mattei, Movants-Appellants,
Loretta Clarke, Jeffrey Clarke, Douglas MacGregor, Lorraine Clasquin, Eric Harslem, Movants,
Dot Com Investment, L.L.C., Jack Riggs, Sixth Street Partners, Technology Capital Corporation, Intervenors-Appellees.
 Docket No. 05-1275CVL.
 
 Docket No. 05-1279CV.
 Docket No. 05-1287CV.
 United States Court of Appeals, Second Circuit.
 Argued: August 24, 2005.
 Decided: March 31, 2006.
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Robert J. Clary, Owens, Clary & Aiken, L.L.P., Dallas, Texas, for Movants-Appellants J. Scott Mattei and James E. Mattei.
 Michael R. Young, Willkie Farr & Gallagher LLP, New York, New York, for Defendants-Appellants BDO Seidman LLP and Paul Shanbrom.
 Lawrence M. Hill and Seth C. Farber (on the brief), Dewey Ballantine LLP, New York, New York, for Defendants-Appellants Deutsche Bank AG and Deutsche Bank Securities, Inc.
 Samara L. Kline, Rod Phelan (on the brief), Baker Botts, L.L.P., Dallas, Texas, for Defendant-Appellee Jenkens & Gilchrist.
 W. Ralph Canada, Jr. and David R. Deary, Deary Montgomery DeFeo & Canada, L.L.P., Dallas, Texas (on the brief); Joe R. Whatley, Jr. and Othni Lathram, Whatley Drake LLC, Birmingham, Alabama (on the brief); Jeffrey H. Daichman, Kane Kessler, P.C., New York, New York (on the brief); and Ernest Cory, Cory Watson Crowder & DeGaris, Birmingham, Alabama (on the brief), for Plaintiffs-Appellees.
 Before: JACOBS, KATZMANN, HALL, Circuit Judges.
 JACOBS, Circuit Judge.
 
 
 1
 This case involves allegations against professional advisors for improper and fraudulent tax counseling. Scott and James E. Mattei, two of the class action plaintiffs, and Deutsche Bank AG and Deutsche Bank Securities, Inc. (collectively "Deutsche Bank"), a defendant, appeal from a judgment entered February 18, 2005 in the United States District Court for the Southern District of New York (Scheindlin, J.), and the accompanying Opinion and Order, entered February 22, 2005, certifying a class action pursuant to Fed.R.Civ.P. 23(b)(3) and approving a class-wide settlement with defendant law firm Jenkens & Gilchrist and three attorneys of the firm (Paul Daugerdas, Erwin Mayer, and Donna Guerin) (collectively the "Jenkens & Gilchrist Defendants"). See Denney v. Jenkens & Gilchrist, 230 F.R.D. 317 (2005). The settlement agreement resolves claims against the Jenkens & Gilchrist Defendants arising out of tax strategies allegedly devised by them and Deutsche Bank, and allegedly marketed by co-defendant BDO Seidman, L.L.P. ("BDO"). The Internal Revenue Service ("IRS") declared the strategies illegal, and has assessed penalties against some of the class members.
 
 
 2
 The Matteis challenge the class certification on the grounds that: [1] the class contains members who have not yet been assessed tax penalties and who (according to the Matteis) therefore lack Article III and/or statutory standing; [2] the named representatives—all of whom have been assessed tax penalties—do not adequately represent the interests of all class members, some of whom have not been penalized (at least as yet); and [3] the district court erroneously conditioned certification on the reaching of a settlement. The Matteis further contend that [4] the district court violated due process and Fed. R.Civ.P. 23(e) in failing to provide a second opt-out period when the settlement terms were finalized.
 
 
 3
 Deutsche Bank challenges two provisions in the settlement agreement concerning the rights of nonsettling defendants and third parties to seek contribution and indemnity from the settling defendants.[1] First, Deutsche Bank argues that the district court erred in approving a provision that extinguishes any claim of a nonsettling defendant or third party against a settling defendant that directly or indirectly arises out of the tax strategies and is for recovery of amounts the nonsettling defendant or third party paid or owes to the class. While bars on claims against settling defendants for contribution and indemnity are not uncommon, Deutsche Bank argues that any bar order provision must be expressly limited to claims for recovery of monies paid to the class or a class member based on the nonsettling defendants' liability. Second, Deutsche Bank argues that the district court erred in approving the "judgment credit" provision, which purports to compensate a non-settling defendant or third party for the loss of claims against the settling defendants but which fails to specify the method by which the judgment credit will be calculated.
 
 
 4
 We affirm in part and in part vacate and remand. The district court did not abuse its discretion in certifying the Denney class, but the contribution and indemnity provisions insufficiently protect the rights of nonsettling defendants and third parties.
 
 BACKGROUND
 
 5
 The district court provided a detailed background of this action in its Opinion & Order. See Denney v. Jenkens & Gilchrist, 230 F.R.D. 317 (2005). We summarize the facts that bear on the issues presented.
 
 A. The Alleged Conspiracy
 
 6
 The Jenkens & Gilchrist Defendants, Deutsche Bank, and others allegedly developed tax strategies based on the purchase of foreign currency options, and marketed them through accounting firms, including defendant BDO. The accounting firms (including BDO) allegedly represented that the tax strategies had been devised by them, not by Jenkens & Gilchrist, and told the plaintiffs that a law firm, Jenkens & Gilchrist, would provide an "independent" opinion letter confirming the legitimacy of the tax shelters. In return for their tax counseling services, the defendants charged a fee based on the amount of tax savings. The defendants allegedly knew that the tax strategies would be held invalid by the IRS, but they marketed them to plaintiffs nevertheless in order to collect "outrageous fees."
 
 
 7
 On July 23, 2003, the lead plaintiffs filed a class action against the law firm Jenkens & Gilchrist, the accounting firm BDO, the investment bank Deutsche Bank, and other professional advisors, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law. Denney, 230 F.R.D. at 321.[2]
 
 B. Denial of Motion to Compel Arbitration
 
 8
 Shortly after the complaint was filed, defendants BDO and Deutsche Bank moved to compel arbitration on the basis of written arbitration agreements with the individual plaintiffs. The district court denied the motion, ruling that the arbitration provisions were void as a matter of public policy. BDO and Deutsche Bank appealed. On June 14, 2005, this Court vacated the order denying defendants' motion to compel, and remanded. Denney v. BDO Seidman, L.L.P., 412 F.3d 58 (2d Cir. 2005). The issues in that appeal do not bear on this one.
 
 
 9
 C. The Settlement Negotiations & Class Certification
 
 
 10
 Class counsel opened settlement negotiations with the Jenkens & Gilchrist Defendants in November 2003, soon after the complaint was filed. Jenkens & Gilchrist claimed to be under severe financial pressure by reasons of the tax shelter litigation and its insurers' disclaimers of coverage. Denney, 230 F.R.D. at 323. Given the uncertainty of insurance and the precarious position of Jenkens & Gilchrist, lead counsel for the class "believed it was in the best interest of all Class Members to immediately attempt to negotiate a global settlement." Decl. of Lead Counsel ¶ 48.
 
 
 11
 
 1. The April 28, 2004 Settlement Agreement & the Conditional Class Certification
 
 
 
 12
 Plaintiffs (including the Camferdam and Riggs plaintiffs) negotiated with the Jenkens & Gilchrist Defendants (and Jenkens & Gilchrist's insurers) in three mediation sessions before Retired Judge Robert Parker. The fruit of the mediation was a settlement agreement dated April 28, 2004, which provided for a $75 million settlement fund, supplied mainly by the insurers. In return for their contribution, the insurers were released from the costs of defending the Jenkens & Gilchrist Defendants against the claims of persons who opt out of the class. Jenkens & Gilchrist reserved the right, however, to terminate the settlement if anyone opted out.
 
 
 13
 On May 14, 2004, the district court preliminarily approved the settlement agreement, preliminarily certified a settlement class pursuant to Fed.R.Civ.P. 23(b)(3), preliminarily approved the class representatives, and authorized summary notice to be sent to potential class members. The court issued an amended order on June 3, 2004. The order, the amended order, and the summary notice state that the class certification is "for settlement purposes only."
 
 
 14
 The summary notice describes the proposed settlement and advises class members that the settlement is beneficial because the existence of insurance to cover the claims is otherwise "uncertain." Class members were given until September 27, 2004 to opt out of the class. The summary notice states that Jenkens & Gilchrist and its insurers had reserved the right to terminate the settlement if one or more class members elect to opt out.
 
 
 15
 Initially, 122 class members elected to opt out, of whom 33 returned to the class.
 
 
 2. December 2004 Settlement Agreement
 
 
 16
 Because of the large number of opt-outs, the parties held a fourth round of mediation and reached a new settlement in December 2004. A supplemental class notice described the new settlement, fixed a January 10, 2005 deadline for objections, and scheduled a fairness hearing, but did not offer a new opt-out period.
 
 
 17
 
 3. The Fairness Hearing and the Final Settlement Agreement
 
 
 
 18
 The district court received objections from three groups of plaintiffs (including the Matteis), from two non-settling defendants (BDO and Deutsche Bank), and from the United States government, which objected to a provision related to confidentiality. After a fairness hearing on January 24, 2005, the settlement parties agreed to certain changes in the proposed agreement.
 
 
 19
 On January 27, 2005, the district court ordered that another class notice be sent disclosing the final settlement agreement and providing an additional week for objections. Many persons renewed their objections, but there were no new objectors.
 
 
 20
 On February 18, 2005, the district court entered a Final Judgment and Order certifying the class, approving the settlement, and dismissing all claims against the Jenkins & Gilchrist Defendants pursuant to Fed.R.Civ.P. 54(b). The accompanying Opinion & Order was entered on February 22, 2005.
 
 
 21
 The settlement provides for a settlement fund of $81 million, an additional $24.9 million for Jenkins & Gilchrist to defend or resolve the claims of opt-outs, and the possibility of another $25 million of insurance coverage.
 
 
 22
 The Matteis, BDO, and Deutsche Bank filed timely appeals to the district court's order certifying the class and approving of the final settlement agreement. This Court granted BDO's motion to dismiss its appeal on November 9, 2005.
 
 DISCUSSION
 
 23
 In support of the settlement, class counsel for over 1000 claimants argue that, if this settlement is rejected, they may be unable to recover anything, and counsel for Jenkens & Gilchrist argues that the settlement is needed to ease the unsettled financial position of the law firm. In opposition, two class members argue that the settlement agreement unfairly binds them, and a nonsettling defendant argues that the settlement agreement unjustly infringes on its rights of recovery from the settling defendants. Most of these challenges are without merit. We remand, however, because the settlement agreement fails to specify the judgment-reduction method that will be used to compensate nonsettling defendants and third parties for the loss of their contribution and indemnity claims, and thereby unfairly jeopardizes the rights of nonsettling parties.
 
 
 24
 A. The Matteis' Challenges: Standing & Certification
 
 
 25
 The Matteis primarily challenge the class certification on the ground that the class includes members who suffered no "injury-in-fact" at the time of certification, and therefore lack both Article III and RICO standing. Relatedly, the Matteis argue that, even if all class members have standing, the class representatives—all of whom have been assessed a tax penalty—cannot adequately represent the interests of all members of the class. These challenges invoke precedents that note the hazards of class actions seeking to vindicate future as well as past tort claims. These precedents do not, however, foreclose such settlements; in the present case, we affirm the class certification under Fed.R.Civ.P. 23(b)(3), and find no abuse of discretion in the district court's approval of the class representatives, conditional certification "for settlement purposes only," or denial of a second opt-out period. We further see no valid challenge to the standing of class members.
 
 
 1. Standard of Review
 
 
 26
 We review de novo the issue of whether a party has standing. See Shain v. Ellison, 356 F.3d 211, 214 (2d Cir.2004).
 
 
 27
 Provided that the district court applied the proper legal standards in determining whether to certify a class, we review the decision for abuse of discretion. Baffa v. Donaldson, Lufkin & Jenrette Securities Corp., 222 F.3d 52, 58 (2d Cir. 2000); MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 7.03. The deferential standard applies to the class certification analysis, including whether the class representative adequately represents the class. Califano v. Yamasaki, 442 U.S. 682, 703, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); Amchem Prods. v. Windsor, 521 U.S. 591, 630, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (Breyer, J., dissenting in part) (noting that the standard of review for class certification is abuse of discretion). We will "exercise even greater deference when the district court has certified a class than when it has declined to do so." Marisol A. by Forbes v. Giuliani, 126 F.3d 372, 375 (2d Cir.1997); see also Parker v. Time Warner Entm't Co., L.P., 331 F.3d 13, 18 (2d Cir.2003). The adequacy of class notice is reviewed for abuse of discretion. In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 145, 168 (2d Cir.1987).
 
 
 2. Standing
 
 
 28
 
 a. Article III Standing
 [3]
 
 
 
 29
 "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a `case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The filing of suit as a class action does not relax this jurisdictional requirement. See Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (discussing standing requirement in class action context); see also Sutton v. St. Jude Med. S.C., Inc., 419 F.3d 568, 570 (6th Cir.2005). To meet the Article III standing requirement, a plaintiff must have suffered an "injury in fact" that is "distinct and palpable"; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (internal quotation marks omitted). For purposes of determining standing, we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" (i.e., the class members). Warth, 422 U.S. at 501, 95 S.Ct. 2197.
 
 
 30
 We do not require that each member of a class submit evidence of personal standing. See, e.g., Rozema v. The Marshfield Clinic, 174 F.R.D. 425, 444 (W.D.Wis. 1997) ("Those represented in a class action are passive members and need not make individual showings of standing."); PBA Local No. 38 v. Woodbridge Police Dep't, 134 F.R.D. 96, 100 (D.N.J.1991) ("Once it is ascertained that there is a named plaintiff with the requisite standing, however, there is no requirement that the members of the class also proffer such evidence."); see also Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002) ("[P]assive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court."). At the same time, no class may be certified that contains members lacking Article III standing. See Adashunas v. Negley, 626 F.2d 600, 604 (7th Cir. 1980) (affirming the denial of a plaintiff class because the definition of the class was "so amorphous and diverse" that it was not "reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief"); see also Ortiz v. Fibreboard Corp., 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (noting petitioners' argument that "exposure-only" class members lack an injury-in-fact and acknowledging need for Article III standing but turning to class certification issues first); Id. at 884, 119 S.Ct. 2295 (Breyer, J., dissenting) (referring to the "standing-related requirement that each class member have a good-faith basis under state law for claiming damages for some form of injury-in-fact"); Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F.Supp.2d 289, 334 (S.D.N.Y.2003) (noting that "each member of the class must have standing with respect to injuries suffered as a result of defendants' actions"); 7 AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, FED. PRAC. & PROC. CIV.3d § 1785.1 (2005) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention."). The class must therefore be defined in such a way that anyone within it would have standing.
 
 
 31
 The Matteis argue that the Denney class includes (by definition) two groups of persons who have not suffered and are not likely to suffer an injury-in-fact—the so-called "future-risk" plaintiffs: (i) class members who employed the tax strategies in 1998 or 1999 but were not audited within the three-year period after filing their returns and (ii) members who began, but did not complete, a tax strategy transaction and did not receive a tax opinion from Jenkens & Gilchrist.[4] Jenkens & Gilchrist conceded that the first group may include several hundred persons who are insulated from exposure to the IRS by the statute of limitations period, and that the second group includes several dozen members.
 
 
 32
 An injury-in-fact must be "distinct and palpable," as opposed to "abstract," and the harm must be "actual or imminent," not "conjectural or hypothetical." Whitmore, 495 U.S. at 155-56, 110 S.Ct. 1717 (internal quotation marks omitted). However, an injury-in-fact differs from a "legal interest"; an injury-in-fact need not be capable of sustaining a valid cause of action under applicable tort law. An injury-in-fact may simply be the fear or anxiety of future harm. For example, exposure to toxic or harmful substances has been held sufficient to satisfy the Article III injury-in-fact requirement even without physical symptoms of injury caused by the exposure, and even though exposure alone may not provide sufficient ground for a claim under state tort law. See Whitmore, 495 U.S. at 155, 110 S.Ct. 1717 ("Our threshold inquiry into standing `in no way depends on the merits of the [plaintiff's claim.]'") (quoting Warth, 422 U.S. at 500, 95 S.Ct. 2197); In re Agent Orange Prod. Liab. Litig. (Ivy v. Diamond Shamrock Chemicals Co.), 996 F.2d 1425, 1434 (2d Cir.1993) (rejecting argument that "injury in fact means injury that is manifest, diagnosable or compensable") (internal quotation marks omitted), overruled in part on other grounds by Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002); Wright, Miller & Kane, supra, § 1785.1 ("[T]his requisite of an injury is not applied too restrictively. If plaintiff can show that there is a possibility that defendant's conduct may have a future effect, even if injury has not yet occurred, the court may hold that standing has been satisfied."). The risk of future harm may also entail economic costs, such as medical monitoring and preventative steps; but aesthetic, emotional or psychological harms also suffice for standing purposes. See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Moreover, the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing. See Sutton, 419 F.3d at 574-75 (holding that the increased risk that a faulty medical device may malfunction constituted a sufficient injury-in-fact even though the class members' own devices had not malfunctioned and may have actually been beneficial).
 
 
 33
 The future-risk members of the Denney class have suffered injuries-in-fact, irrespective of whether their injuries are sufficient to sustain any cause of action. All Denney class members—by definition—received allegedly negligent or fraudulent tax advice, and took some action in reliance on that advice. According to their complaint, which we accept as true, plaintiffs have "paid ... excessive fees for ... negligent or fraudulent tax advice," they "have and will continue to incur costs in rectifying" the actions taken under the allegedly erroneous advice, and class members have "foregone legitimate tax savings opportunities."
 
 
 34
 Additionally, those members who completed a tax transaction but have not yet been audited still run the risk of being assessed a penalty under an exception to the statute of limitations. (Not for nothing has the United States challenged confidentiality proceedings in this case.[5]) They have also taken costly and time-consuming steps to rectify errors in their past or future tax filings, and paid fees for the advice; these costs are not offset (for standing purposes) by the taxes saved by implementing the tax strategies challenged by the IRS. Similarly, those members who did not complete a tax transaction nonetheless took some steps in reliance on the advice, which—as per the complaint—entailed time and money. Accordingly, each Denney class member has suffered an injury-in-fact.[6]
 
 
 35
 The other elements of Article III standing—traceability and redressability—are also satisfied. That these injuries—psychological and economic—are fairly traceable to the alleged conduct of defendants is clear: the Denney class is limited to persons who received and took actions in reliance on the allegedly fraudulent or negligent tax advice provided by defendants, and the asserted injuries-in-fact were a direct result of that reliance. Similarly, were plaintiffs to prevail, their injuries would be redressed by recovery for their economic losses. The Denney class has Article III standing.
 
 
 36
 
 b. RICO Standing
 
 
 
 37
 The Matteis also challenge standing under the federal RICO statute. RICO standing is a more rigorous matter than standing under Article III. See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 123 (2d Cir.2003). "A RICO plaintiff `only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]'" and only when his or her "actual loss becomes clear and definite." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767-69 (2d Cir.1994) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)) (considering a bank's RICO claim arising out of fraudulently induced loans and holding that "to the extent [the bank's] complaint is predicated on loans that have not been foreclosed, its claims are not ripe for adjudication because it is uncertain whether [the bank] will sustain any injury cognizable under RICO"); see Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135 (2nd Cir.2003) ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite.") (internal quotation marks omitted). Although the Denney complaint alleges direct harms to the class members arising from the same conduct that constitutes the alleged RICO violation, the complaint also acknowledges that the extent of damages to some class members is unknown. For example, some members may yet be assessed a penalty by the IRS. These class members thus fail to meet the "clear and definite" damages element required for RICO standing.
 
 
 38
 Nonetheless, we conclude that the district court had discretion to maintain jurisdiction over the state law claims of the members whose RICO claims were unripe; so the exercise of such jurisdiction (by certifying the class) does not constitute error. This court held in Lerner, 318 F.3d at 129-30, that RICO standing is not jurisdictional, and therefore that a court has original jurisdiction over a RICO claim even if plaintiffs lack standing under the RICO statute. Even though the RICO claims in Lerner were dismissed, the original jurisdiction over the RICO claims provided a ground on which the district court could have exercised supplemental jurisdiction over plaintiffs' state law claims. A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage, Lerner, 318 F.3d at 130; however, the Lerner action was remanded for the district court to reconsider its dismissal of the state law claims in light of the fact that the district court was hearing identical state law claims in a separate diversity action.
 
 
 39
 We have not previously applied Lerner in the context of a class action; but the class action context does not justify a distinction.[7] The plaintiffs in Lerner were a group of more than 50 individual and company investors who had been victims of a fraudulent scheme; a garden-variety law-suit may still involve a large number of parties. Moreover, extending Lerner to the class action context would not greatly expand this Court's jurisdiction: courts would still be expected to dismiss state law claims when the federal law claims have been dismissed except in those limited situations when judicial economy favors retaining jurisdiction. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.").
 
 
 40
 Indeed, a Lerner-type situation—with some plaintiffs who have RICO standing and some plaintiffs who do not—is less likely to occur in the class action context. As discussed further in the context of the Matteis' challenge to the class certification, Fed.R.Civ.P. 23(a) imposes four threshold requirements applicable to all class actions:
 
 
 41
 (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").
 
 
 42
 Ortiz v. Fibreboard Corp., 527 U.S. 815, 828 n. 6, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Additionally, "for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations," Fed. Civ. P. 23(b)(3) includes two additional requirements: "Common questions must `predominate over any questions affecting only individual members'; and class resolution must be `superior to other available methods for the fair and efficient adjudication of the controversy.'" Amchem, 521 U.S. at 615, 117 S.Ct. 2231 (quoting Fed. R.Civ.P. 23(b)(3)). Ordinarily, when some plaintiffs have RICO standing and some do not, class certification will be unavailable for want of commonality, adequacy, or superiority, and the Lerner question will not be presented in the class context.
 
 
 43
 The key question under Lerner is not whether the action is a class action, but whether prudential interests justify the exercise of supplemental jurisdiction over the claims of plaintiffs who lack RICO standing. Lerner, 318 F.3d at 130. In the present case, the district court made no express ruling, but ruled implicitly by granting class action status. This was not an abuse of discretion: the same factual and legal issues must be adjudicated for both the RICO and non-RICO Denney class members; so a single action serves judicial economy and uniformity. We therefore hold that, although some Denney class members lack RICO standing, the district court could have properly retained jurisdiction over these class members' state law claims. Class certification was therefore not improper on standing grounds.
 
 
 3. Certification & Settlement Issues
 
 
 44
 The Matteis' remaining challenges relate to the requirements for class certification and settlement approval under Fed. R.Civ.P. 23 and general principles of due process. The district court engaged in a lengthy and well-reasoned analysis of the Rule 23 requirements. See Denney, 230 F.R.D. at 330-39. We therefore limit our discussion to the issues raised on appeal.
 
 
 45
 
 a. Adequacy of Class Representatives
 
 
 
 46
 Fed.R.Civ.P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." See also Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir.1999). Adequacy must be determined independently of the general fairness review of the settlement; the fact that the settlement may have overall benefits for all class members is not the "focus" in "the determination whether proposed classes are sufficiently cohesive to warrant adjudication[.]" Ortiz, 527 U.S. at 858, 119 S.Ct. 2295 (internal quotation marks omitted). Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir.2000); Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 170 (2d Cir.2001). A conflict or potential conflict alone will not, however, necessarily defeat class certification—the conflict must be "fundamental." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 145 (2d Cir.2001).
 
 
 47
 Relying on the Supreme Court's decision in Amchem Prods. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Matteis argue that the Denney class fails certification because of a conflict of interest that, as a matter of law, cannot be reconciled with Rule 23(a)(4). Specifically, the Matteis argue that there is an irreconcilable conflict between (on the one hand) the class representatives, all of whom have already been assessed a penalty and know the full extent of their loss, and (on the other) the future-risk class members, who are awaiting the possible assessment of a penalty. In Amchen, the Supreme Court held that the named representatives —who had manifested injuries from asbestos exposure—could not adequately represent a class that included members who had been exposed to asbestos but had not yet shown signs of injury. The Supreme Court reasoned that the named representatives were interested in immediate payment, whereas the exposure-only members would want an inflation-protected fund for the future. See Amchen, 521 U.S. at 626-27, 117 S.Ct. 2231; see also Ortiz, 527 U.S. at 856, 119 S.Ct. 2295 ("[I]t is obvious after Amchem that a class divided between holders of present and future claims (some of the latter involving no physical injury and to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B)[.]"); Stephenson v. Dow Chem. Co., 273 F.3d 249 (2d Cir.2001) (allowing collateral attack on class action settlement more than a decade after the settlement had been approved where absent class members had not been adequately represented and no provision had been made for the future claimants).
 
 
 48
 We agree with the district court that Amchem is distinguishable. Denney, 230 F.R.D. at 332-33. Amchem involved potential claimants who were unborn or who did not know of their exposure at the time the class was certified, whereas all members of the Denney class have been identified, have been given notice of the settlement, and have had the opportunity to voice objections or to opt out entirely. See In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 313 (3d Cir.1998) (declining to extend Amchem to a class action involving an insurance company's deceptive sales practices, explaining that, "[h]aving received notice of the pending class action and the availability of relief, members of the class can determine whether they have been victims of Prudential's fraud"); see also MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 4.02 ("There is no per se prohibition against certifying a single class including both presently injured and future claimants."). Also, unlike in Amchem, the full extent of injuries suffered by the future-risk class members will be known soon enough; they will be in a position to evaluate their full damages by the time they appear before the Special Master for apportionment of the settlement fund. So no one here is interested in a long-term fund; the class representatives have every incentive to vigorously pursue the common interest of all class members. The Denney class therefore does not suffer from the conflicts that plagued the Amchem Court. We conclude that the district court did not abuse its discretion in holding that there are no fundamental conflicts between the representatives and the future-risk members of the class.
 
 
 49
 
 b. Conditional Class Certification
 
 
 
 50
 During the 2004 settlement negotiations, the district court issued preliminary orders certifying a conditional class pursuant to Fed.R.Civ.P. 23(b)(3). The Preliminary Orders provided for automatic non-certification in the event that the settlement falls apart:
 
 
 51
 As agreed in the Stipulation of Settlement, if for any reason (including any party's exercise of a valid right to terminate under the Stipulation) the Court declines to grant final approval of the Settlement, then the certification of the Class shall become null and void without further Court action.
 
 
 52
 This Court has not previously considered the viability of conditional class certifications for settlement purposes under amended Rule 23. Lower courts have, however, continued to employ this practice. Denney, 230 F.R.D. at 347 & nn. 197-199 (citing over ten lower court opinions from around the country and various other authorities, including the Manual for Complex Litigation and Moore's Federal Practice). The Matteis argue that the conditioning of certification on settlement is impermissible under Fed.R.Civ.P. 23 ("Rule 23"), as amended in 2003, and under the Supreme Court's holding in Amchen.
 
 
 53
 Rule 23 governs class action certifications. Former Rule 23(c)(1) provided that a court's order of class certification "may be conditional, and may be altered or amended before the decision on the merits." Fed.R.Civ.P. 23(c)(1) (2002). Under the former rule, courts routinely conditioned certification of classes on settlement or for litigation purposes only, which usefully allowed a defendant to concede certain facts for limited purposes. Among changes made to Rule 23(c)(1) in 2003, the phrase regarding conditional certification was deleted. See Fed.R.Civ.P. 23(c)(1) (2003); see also Advisory Committee's 2003 Note on Fed.R.Civ.P. 23(c)(1).
 
 
 54
 The Matteis argue that this deletion was intended to prohibit the practice of conditional certifications. The amended Rules do not, however, state that conditional certification is prohibited and such a reading is in no way required under the plain text of the amended rule. The Advisory Committee Notes indicate that the change was made to ensure that courts understood their obligations when certifying a class, not to eliminate the practice of conditional certification. See Advisory Committee 2003 Note on Fed.R.Civ.P. 23(c)(1) ("A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."); see also Report of the Judicial Conference Committee on Rules of Practice and Procedure, at 12 (September 2002), available at http://www.uscourts. gov/rules/Reports/ST9-2002.pdf (stating that the reference to conditional certification was deleted "to avoid the unintended suggestion, which some courts [had] adopted, that class certification may be granted on a tentative basis, even if it is unclear that the rule requirements are satisfied"). Such a reading makes Rule 23(c)(1) consistent with the Supreme Court's decision in Amchem, in which the Court explained that the Rule 23(e) inquiry into the fairness of a settlement cannot supplant the inquiries under Rules 23(a) and (b) regarding whether the requirements for class certification have been met. Amchem, 521 U.S. at 619-21, 117 S.Ct. 2231; Ortiz, 527 U.S. at 858, 119 S.Ct. 2295.
 
 
 55
 In light of this stated intent, we conclude that conditional certification survives the 2003 amendment to Rule 23(c)(1).[8] Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met. These requirements should not be watered down by virtue of the fact that the settlement is fair or equitable. See In re Ephedra Products Liab. Litig., 231 F.R.D. 167, 169-170(S.D.N.Y.2005). But if the requirements of Rule 23(a) and (b) are met, certification may be granted, conditionally or unconditionally.
 
 
 56
 The district court's conditional certification of the Denney class was, therefore, permissible. The district court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review, and determined that, for the purposes of settlement, the certification requirements were met. We do not find that this was an abuse of its discretion.
 
 
 57
 
 c. Second Opt-Out Period
 
 
 
 58
 The Matteis' final objection to the class certification is that the district court should have provided a second opportunity for class members to opt out of the class because the terms of the settlement differed from those described in the original class notice. Among other things, the terms for opt-outs improved: originally, nothing had been provided for opt-outs, and the existence of funds to pay opt-outs was uncertain; in the final settlement, $25 million has been set aside for their benefit. The Matteis argue that both due process and Fed.R.Civ.P. 23(e) require a second opt-out period. Again, we disagree.
 
 
 59
 Fed.R.Civ.P. 23(e)(3) provides that a court, in its discretion, may refuse to approve a settlement unless it affords a new opportunity for prospective class members to opt out of the class. Among the factors that may be considered by the court is whether there have been any "changes in the information available to class members since expiration of the first opportunity to request exclusion." Advisory Committee's 2003 Note on Fed. R. 23(e)(3).
 
 
 60
 Neither due process nor Rule 23(e)(3) requires, however, a second opt-out period whenever the final terms change after the initial opt-out period. Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached. As the Advisory Committee Notes make clear, "Rule 23(e)(3) authorizes the court to refuse to approve a settlement unless the settlement affords a new opportunity to elect exclusion in a case that settles after a certification decision...." Adv. Comm.2003 Notes to Fed. R.Civ.P. 23(e)(3). However, the court is under no obligation to do so: "The decision whether to approve a settlement that does not allow a new opportunity to elect exclusion is confided to the court's discretion." Id.
 
 
 61
 We see no abuse of discretion here. As the district court explained, the original notice informed all class members of the basic settlement terms. See Denney, 230 F.R.D. at 345. The terms for class members have only improved since the notice was sent. That the terms for opt-outs have likewise improved does not mandate a new opt-out period. An additional opt-out period is not required with every shift in the marginal attractiveness of the settlement; there is always the chance that a better deal will come along for those who opt out.
 
 
 62
 As the district court observed, there is no basis for claiming bait-and-switch tactics. The original notice made clear that the terms of the final settlement could change and that those who remained in the class would be bound by these changes:
 
 
 63
 If (a) Jenkens & Gilchrist and its insurers do not terminate the settlement because one or more Class Members has opted out, and (b) you do not request to be excluded from the Class, then whether or not you submit a proof of claim, you will be bound by any and all judgments, orders or settlements entered or approved by the Court, whether favorable or unfavorable to the Class, including, without limitation, the judgment described [in this notice].
 
 
 64
 Moreover, when the class notice was sent, insurance coverage for non-settling plaintiffs was uncertain; and coverage continues to be uncertain. As the district court observed, "[a] number of class members, with the same information as [the Matteis], took the gamble of opting out prior to the close of the first period, taking the risk that Jenkens [& Gilchrist] would be unable to find resources to meet their claims; [the Matteis] chose not to take that risk." Denney, 230 F.R.D. at 345. The Matteis evidently believe that they lost the gamble; but they make no argument that warrants disruption of an otherwise fair settlement so that they can place new bets. We conclude that there was no abuse of discretion in the district court's refusal to provide a second opt-out period when the terms for nonsettling parties improved.
 
 
 65
 B. Deutsche Bank's Challenges: The Bar Order and Judgment Credit
 
 
 66
 Deutsche Bank, a nonsettling defendant, objects to two provisions in the final settlement agreement: the bar order provision and the judgment credit (or "judgment reduction" or "judgment setoff") provision. The bar order provision prohibits nonsettling defendants or third parties ("nonsettling parties") from asserting a "Claim Over" against settling defendants. A "Claim Over" is a claim that:
 
 
 67
 (i) directly or indirectly arises out of or is based upon, related to or connected with any of the Tax Strategies, and (ii) is for recovery of amounts that the Non-Settling Defendant or Third Party paid or owes to the Class ... or a Class Member.... [Such claims] include[], but [are] not limited to, all claims by a Non-Settling Defendant or Third Party for contribution and indemnity for amounts owed or paid to a Class Member.
 
 
 68
 The bar order is mutual—settling defendants are similarly prohibited from asserting such claims against nonsettling parties.
 
 
 69
 To further compensate the nonsettling parties for the loss of these claims, the settlement agreement contains a judgment credit provision, which provides:
 
 
 70
 Notwithstanding any other provision of this judgment, no Released Person [i.e., the Jenkens & Gilchrist Defendants] shall be liable to any Non-Settling Defendant... on any Claim Over for amounts owed or paid to Class Members:
 
 
 71
 (a) To effectuate this protection of Released Persons and to compensate Non-Settling Defendants ... for the barring of their Claims Over, the Court orders that any judgment or award obtained by the Settlement Class (if the case in which an issue arises is a class action) or a Member thereof (if the case in which an issue arises is brought by a Class Member) against a Non-Settling Defendant will be reduced by the amount or percentage, if any, necessary under applicable law to relieve the Released Persons of all liability to such Non-Settling Defendant... on such barred Claims Over. In any case in which applicable law is silent, the amount of settlement credit, offset or judgment reduction, if any, will be the amount or percentage agreed or determined in that case.
 
 
 72
 The judgment credit thereby provides that, if applicable law would otherwise entitle nonsettling parties to recover from the Jenkens & Gilchrist Defendants some or all of a judgment against them, the judgment against the nonsettling parties will be reduced in an amount sufficient to compensate for the loss of that entitlement. See In re Masters Mates & Pilots Pension Plan, 957 F.2d 1020, 1031 (2d Cir.1992) ("[A] court should not approve a settlement bar that grants a nonsettling defendant a judgment reduction less than the amount paid by settling defendants toward damages for which the nonsettling defendant would be jointly and severally liable."); see also Gerber v. MTC Elec. Techs. Co., 329 F.3d 297, 305 (2d Cir.2003). But, while the settlement agreement duly provides that there will be a bar on certain claims, it does not specify the method for calculating the reduction, and the reference to "applicable law" is not indicative: "[t]here are three basic methods for determining how much a judgment against a nonsettling defendant should be reduced in light of a settlement by the remaining defendants. These are the pro rata, the proportionate fault and the pro tanto methods." In re Masters Mates, 957 F.2d at 1028-29. The district court found that the flexibility of the term "applicable law" is needed because class members have filed suit in a variety of state and federal courts throughout the country, and the court did not consider it appropriate to specify the method by which judgment credits should be made in each of these jurisdictions. Denney, 230 F.R.D. at 340-41.
 
 
 1. Standard of Review
 
 
 73
 "Whether to approve a settlement normally rests in the discretion of a district judge." In re Masters Mates, 957 F.2d at 1026. However, "we may review the district court's decision de novo where an appellant's challenge to the authority of the district court to approve the settlement raises novel issues of law." Gerber, 329 F.3d at 302.
 
 
 2. The Bar Order Provision
 
 
 74
 Deutsche Bank does not challenge the district court's approval of a bar order prohibiting claims of contribution or indemnification. Rather, Deutsche Bank argues that the Denney bar order also impermissibly prohibits independent claims of nonsettling parties against settling defendants, and thereby offends the rule in Gerber.
 
 
 75
 We explained in Gerber that a district court may properly bar claims of nonsettling defendants against settling defendants for contribution or indemnity. See id. at 305. Such a bar may be necessary to achieve settlement:
 
 
 76
 If a nonsettling defendant against whom a judgment had been entered were allowed to seek payment from a defendant who had settled, then settlement would not bring the latter much peace of mind. He would remain potentially liable to a nonsettling defendant for an amount by which a judgment against a nonsettling defendant exceeded a nonsettling defendant's proportionate fault. This potential liability would surely diminish the incentive to settle.
 
 
 77
 In re Masters Mates, 957 F.2d at 1028. By the same token, however, a nonsettling party's independent claims—such as "independent reputational damages or losses relating to the cost of defense arising out of a breached contractual or fiduciary relationship with [a settling defendant]"— should not be extinguished unless the judgment credit provision compensated for the loss of such claims. Gerber, 329 F.3d at 306. The bar order at issue in Gerber was somewhat ambiguous as to whether it applied to independent claims, so we modified the bar order to make this limitation explicit. In so doing, we followed the parties' own assertions that the bar order was intended to apply only to claims "where damages are calculated based on the non-settling defendants' liability to the plaintiffs." Gerber, 329 F.3d at 305, 307 (emphasis added).
 
 
 78
 No such modification is necessary here. The Denney bar order is tailored to claims that involve the tax strategies and are for recovery of monies paid to the class or a class member. (The bar order provides that a "Claim Over" is "not limited to" claims for contribution and indemnity; but that phrase does not impermissibly extend the bar order.[9]) The bar order therefore does not apply to independent claims against settling defendants. Deutsche Bank nonetheless objects on the ground that the bar should be expressly limited to claims for recovery of monies paid to the class or a class member based on the nonsettling defendants' liability to the plaintiffs, and thus should not apply to payments made by nonsettling defendants to class members through settlement agreements that deny liability or decline to admit it. Such payments, however, are not based on independent claims, and we therefore see no problem with the bar order's scope.
 
 
 79
 We appreciate Deutsche Bank's argument that payments it may make in settlement do not necessarily signify its concession of its liability. However, such payments would foreseeably be made to settle claims of liability and, given the realities of litigation and settlement, would be nonetheless on account of liability or the risk thereof, including the reputational risk that is often at stake in such litigation. Such payments therefore would clearly be barred as repackaged contribution claims, a means by which a nonsettling party could circumvent the bar order by subsequently settling with plaintiffs and then seeking contribution or indemnity from the original settling defendants.[10] Moreover, were we to adopt Deutsche Bank's position, we would create an opportunity for nonsettling parties to collude with class members: The class members could receive a favorable settlement from the nonsettling parties and then assist the nonsettling parties in their suits against the settling defendants.
 
 
 80
 We see no unfairness in barring payments made by nonsettling parties in settlement. The nonsettling parties have the ability to negotiate the settlement so as to account for their relative liability, as the plaintiffs' recovery at trial would be reduced pursuant to the judgment credit provision. We conclude that there was no abuse of discretion in the district court's approval of the bar order.
 
 
 2. The Judgment Credit Provision
 
 
 81
 The judgment credit provision does, however, inflict unfairness on Deutsche Bank and other nonsettling parties. Ordinarily, the potential harshness of a bar order is mitigated by a judgment credit provision that protects a nonsettling party from paying damages exceeding its own liability. The Denney judgment credit provision, however, simply provides that nonsettling parties shall be "sufficiently" compensated, without specifying how such compensation shall be calculated. The use of the word "sufficiently"—if read to mean "fully," as the district court urges—might provide nonsettling parties with some peace of mind. But they are unfairly prejudiced by the failure to specify how that full and sufficient compensation will be calculated. Denney, 230 F.R.D. at 341 n. 161 ("The purpose of the judgment credit is to fully compensate non-settling defendants for the loss of their contribution claims.") (emphasis in original).
 
 
 82
 We are persuaded by the reasoning of the Fourth Circuit in In re Jiffy Lube, 927 F.2d 155 (4th Cir.1991). The bar order in that case (as here) prohibited nonsettling parties from seeking contribution or indemnification against settling defendants, but deferred the determination of the judgment credit methodology. Id. at 160. The Fourth Circuit recognized that this deferral was designed to avoid the complication that different jurisdictions require different methodologies, but the court nonetheless held that the failure to specify a methodology "threaten[ed] prejudice to [a nonsettling defendant's] substantive right of contribution, and may deprive the plaintiff class members of information affecting their ability to assess fairly the merits of the settlement." Id.
 
 
 83
 As to plaintiffs, it is clear that the method of setoff chosen affects the desirability of a proposed partial settlement. For example, plaintiffs bear the risk of a "bad" settlement under the "proportionate" rule, while under the "pro tanto" rule the risk passes to the non-settling defendants and plaintiffs gain more certainty from the earlier resolution of the setoff figure. Moreover, the "proportionate" method entails a delay in ascertaining the final amount of setoff which makes it difficult to frame a notice to the class that fairly presents the merits of the proposed settlement.... If the "proportionate" method is used, the notice to plaintiffs should inform them of this shortcoming.
 
 
 84
 ....
 
 
 85
 As to non-settling defendants ..., the choice of setoff method determines to a large extent the manner in which a defense should be made at trial. The extent of wrongdoing of the settling defendants in relation to [non-settling defendants'] liability is either highly relevant (under the "proportionate" rule), minimally important (under the "pro rata" rule), or not important at all (under the "pro tanto" rule). [A non-settling defendant] is entitled to know what the law of the case is in advance of trial, not on the eve, after discovery is concluded and witnesses have been prepared.
 
 
 86
 Moreover, the court's failure to designate a setoff method exposes [a non-settling defendant] to the risk of receiving inadequate credit for the contribution bar imposed on it. There is certainly some risk involved under any of the methods the court might have chosen.... However, choosing a method at least allows the parties to know what the nature of that risk is. The court assured... that it would use its "inherent equitable powers" to see that [the non-settling defendants] receive[] an appropriate credit. Yet the court never explained how such powers would work....
 
 
 87
 Id. at 161-62. Although we have not previously expressly adopted the Fourth Circuit's approach, we cited In re Jiffy Lube favorably in Gerber.[11]
 
 
 88
 Jenkens & Gilchrist and Plaintiffs/Intervenors argue that it would be cumbersome to specify a judgment credit methodology to be applied in all—or in each[12]—of the jurisdictions that are likely to consider class members' claims. Maybe it would; but it would be no less cumbersome for Deutsche Bank and the other nonsettling parties to litigate this issue in every jurisdiction in which they are sued. Moreover, there would be no need to specify a judgment credit methodology if the bar on claims for contribution or indemnity was likewise left to "applicable law," instead of being defined under the court-approved settlement agreement. Having achieved certainty with respect to their own future liability, the Jenkens & Gilchrist Defendants cannot in all equity complain that it is cumbersome to afford a measure of predictability to the nonsettling parties. Accordingly, we vacate the district court's judgment and remand for modification of the judgment credit and/or bar order provisions.
 
 
 89
 For the foregoing reasons, we AFFIRM in part and in part VACATE and REMAND.
 
 
 
 Notes:
 
 
 [1]
 Nonsettling defendant BDO also appealed the district court's approval of the two provisions. On November 9, 2005, this Court granted BDO's unopposed motion to dismiss its appeal
 
 
 [2]
 The plaintiffs in two separately-filed actions,Camferdam v. Ernst & Young Int'l, Inc, No. 02 Civ. 10100 (S.D.N.Y.) and Jack Riggs v. Jenkens & Gilchrist, No. 03-6291-C (Co.Ct.Dallas, Tex.), have appeared in this action as additional class representatives. Denney, 230 F.R.D. at 321 n. 1.
 
 
 [3]
 The Matteis only raised a standing challenge shortly before the district court issued its judgment, and the district court did not expressly consider the issue, although the court discussed whether class members suffered injuries within the context of its analysis of class certification issues under Fed.R.Civ.P. 23(a)(4)See Denney, 230 F.R.D. at 331-33. We are nonetheless required to consider any standing issue, as it speaks to our jurisdiction over this action. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); Thompson v. County of Franklin, 15 F.3d 245, 248-49 (2d Cir. 1994).
 
 
 [4]
 The settlement agreement defines the Denney class as:
 all Persons who, from January 1, 1999 through December 31, 2003, inclusive, either (1) consulted with, relied upon, or received oral or written opinions or advice from [the Jenkens & Gilchrist Defendants] concerning any one or more of the Tax Strategies and who in whole or in part implemented, directly or indirectly, any one or more of the Tax Strategies or (2) filed [a joint tax return] with a person described in (1) ..., and (3) the legal representatives, heirs, successors, and assigns of all Persons described in (1) and (2).
 
 
 [5]
 The fact that the three-year statute of limitations may have run on the IRS's ability to assess a tax penalty for some class members who filed tax returns does not establish that these members have no future risk of tax assessment. The taxing authorities may be able to utilize an exception to the statute of limitations under 26 U.S.C. § 6501. For example, the IRS may argue that some class members intended to evade the payment of taxes, or that they willfully attempted such evasion
 
 
 [6]
 The cases cited by the Matteis holding that faulty tax advice does not constitute an injury speak solely to the "legal interest" and not to whether receipt of faulty advice constitutes an injury-in-fact for standing purposesSee, e.g., Thomas v. Cleary, 768 P.2d 1090, 1093-94 (Alaska 1989); Streib v. Veigel, 109 Idaho 174, 706 P.2d 63, 67 (Id. 1985); Wall v. Lewis, 366 N.W.2d 471, 473 (N.D. 1985); Philips v. Giles, 620 S.W.2d 750, 750-51 (Tex.App.—Dallas 1981); Bronstein v. Kalcheim & Kalcheim, Ltd., 90 Ill.App.3d 957, 46 Ill.Dec. 374, 414 N.E.2d 96, 98 (Ill.App. 1 Dist. 1980).
 
 
 [7]
 Only one sister court has considered the issue of supplemental jurisdiction over state law claims of class members when such members lack federal subject matter jurisdiction, and its decision predatesLerner. Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1036-37 (8th Cir.1999) (holding that federal court only has jurisdiction over the state law claims of class members who also have federal claims). But see Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 94 (S.D.N.Y. 2001) (declining to follow Fielder).
 
 
 [8]
 The Matteis also cite the amendment to subpart (c)(2)(B) of Rule 23 to support their argument that conditional certifications are no longer proper. This argument is even more tenuous. Rule 23(c)(2)(B), which governs the notice requirements to class members, was amended in 2003 to begin with the phrase: "For any class certified ...." The Matteis argue that the word "certified" indicates that no opt-out notice can be sent until after certification, which would make preliminary or conditional certification impossible. As with the other amendment, however, there is no clear statement to that effect. The Committee Notes make no mention of the change whatsoever, and we decline to read into this amendment an intent to foreclose a practice so common and important as conditional certification
 
 
 [9]
 This wording is qualified by the requirement that the "Claim Over" involve the tax strategies and be for monies "paid or owe[d] to the Class ... or a Class Member." The phrase "not limited to" therefore does not extend the bar to independent claims, but rather ensures that the bar reaches all dependent claims, whether denominated as a claim for contribution, indemnity or something elseSee Gerber, 329 F.3d at 305 (discussing "disguised" contribution or indemnity claims, "such as a negligence claim where the injury to the non-settling defendants was their liability to the plaintiffs").
 
 
 [10]
 Notably, a number of states have enacted statutes prohibiting nonsettling parties from seeking contribution from settling partiesSee, e.g., N.Y. Gen. Oblig. Law § 15-108 (McKinney's 2006). Such a rule is seen to encourage settlements by providing the settling parties with some certainty as to their future liability.
 
 
 [11]
 TheGerber court observed that "[c]onsistent with In re Jiffy Lube ..., the district court's orders informed the parties well before trial of the method that will be utilized to calculate the set-off," so that the nonsettling defendants therefore knew how to develop their trial strategy. Gerber, 329 F.3d at 304-05.
 The district court's reliance on In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1362 (2d Cir.1991) is misplaced. Though we approved the judgment credit provision based on "applicable law," our approval was based "in part because `neither the settling nor the nonsettling defendants objected to these matters being deferred.'" In re Masters Mates, 957 F.2d at 1031 (quoting In re Ivan F. Boesky, 948 F.2d at 1369).
 
 
 [12]
 As noted in oral argument, the judgment credit provision may have to specify different methodologies for different jurisdictions, as the state laws governing contribution and indemnity claims and judgment credits vary across jurisdictions