The **AMERICAN MEDICAL ASSOCIATION, et al.,**
Plaintiffs,

v.

**UNITED HEALTHCARE CORPORATION, et al., Defendants.**

**No. 00 Civ. 2800(LMM).**

United States District Court,
S.D. New York.

Aug. 22, 2008.

MEMORANDUM AND ORDER

McKENNA, District Judge.

Defendants[1] here move to dismiss claims brought by various Plaintiffs pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Plaintiffs, who include subscribers to certain health plans ("Subscriber Plaintiffs")[2], out-of-net-

1. The defendants consist of the United Healthcare Corporation, including the United Health Group Incorporated ("UGI"), United Healthcare Insurance Company ("UHIC"), United Healthcare Services, Inc. ("UHS"), United Healthcare Services of Minnesota, Inc. ("UHS of Minnesota"), United Healthcare Services Corporation ("UHSC"), Ingenix, Inc. ("Ingenix") (collectively, "United Defendants"); Metropolitan Life Insurance Company, and American Airlines, Inc. ("American Airlines") (all, collectively, "Defendants").

2. For purposes of this motion, Subscriber Plaintiffs consist of David and Colleen Finley ("the Finleys"), S. Joseph Domina ("Domina"), Sandra Taylor ("Taylor"), Clifford E. Wilson, individually and as executor of the estate of Michele S. Wilson ("the Wilsons"), Peter Oborski ("Oborski"), Michael and Susie Grisham ("the Grishams"), Paul Steinberg ("Steinberg"), Helene Coull ("Coull"), and Edward F. Mitchell, Jr. ("Mitchell"). Subscriber Plaintiffs as referred to herein do not

work medical care providers suing as assignees of certain subscribers' benefits claims ("Provider Plaintiffs") [3], and medical associations suing in their associational capacity on behalf of their members ("Medical Association Plaintiffs") [4] (all, collectively, "Plaintiffs"), oppose Defendants' motion to dismiss. For the reasons set forth herein, Defendants' motion for dismissal is GRANTED IN PART and DENIED IN PART.

### 1.

Here, Plaintiffs challenge Defendants' practices in relation to decisions involving the "usual, customary, and reasonable" ("UCR") rates paid by Defendants for out-of-network medical services in connection with certain health care plans. Plaintiffs allege that Defendants' practices in determining UCR rates, including Defendants' alleged reliance on the Prevailing Healthcare Charges System ("PHCS") database, violate ERISA and RICO, the terms of the Employer Plans themselves, and, in the case of certain plaintiffs, New York's Deceptive Trade Practices statute and contract law.

This action was initially filed in New York state court and was removed to this Court in April 2000. In the intervening years this Court has addressed several motions, including multiple motions to dismiss. This Court granted in part and denied in part both a motion to dismiss the Counterclaim Complaint, see Am. Med. Ass'n v. United Healthcare Corp., 2007 WL 683974 (S.D.N.Y. March 5, 2007), and a motion for leave to amend the Third Amended Complaint, see Am. Med. Ass'n v. United Healthcare Corp., 2006 WL

3833440 (S.D.N.Y. Dec.29, 2006). This Court also granted in part and denied in part Defendants' motion for summary judgment. See Am. Med. Ass'n v. United HealthCare Corp., 2007 WL 1771498 (S.D.N.Y. June 18, 2007). Plaintiffs moved for a reconsideration of the June 18th Order, and although reconsideration was granted, the Court opted to adhere to its original findings. See Am. Med. Ass'n v. United Healthcare Corp., 2007 WL 2457358 (S.D.N.Y. August 23, 2007).

Recently, this Court authorized Plaintiffs to assert additional claims against United Defendants for antitrust and RICO violations based upon Defendants' alleged scheme to under-reimburse beneficiaries and medical care providers by manipulating UCR data. See Am. Med. Ass'n v. United Healthcare Corp., 2006 WL 3833440 (Dec. 29, 2006). A comprehensive fourth amended complaint ("FAC") was filed on July 10, 2007.

The instant motion concerns new as well as already existing claims contained within the FAC. Defendants seek to dismiss Plaintiffs' RICO claims, antitrust claims, and several ERISA claims for various reasons set forth in Defendants' supporting papers.

### 2.

Under Rule 12(b)(6) a complaint will be dismissed if there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. See York v. Ass'n of Bar of City of New York, 286 F.3d 122, 125 (2d Cir.

---

include Matthew Crema or any of the various intervenor plaintiffs in this litigation.

3. The Provider Plaintiffs are John Marcum, M.D., Michael Attkiss, M.D., and William B. Ericson, Jr., M.D.

4. The Medical Association Plaintiffs consist of the American Medical Association, the Medical Society of the State of New York, and the Missouri State Medical Association.

2002); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Communications, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).

### 3.

■ First, Plaintiffs argue in their opposition papers that this Court need not consider Defendants' Motion to Dismiss because said motion violates F.R.C.P. 12(g), and should be barred in its entirety. (Plaintiffs' Opposition ("Pls.' Opp.") 3–6.) This contention is without merit.

The pertinent statutory language reads: A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rules permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted ...

F.R.C.P. 12(g).

Plaintiffs contend that Defendants' current motion to dismiss, and in particular their motions regarding Plaintiffs' RICO and antitrust claims,

were all available to Defendants at the time of their initial opposition to Plaintiffs' motion for leave ... [and that] Defendants' successive filing of the present motion to dismiss was undertaken to gain unjust delay—the delay precisely sought to be prevented by Rule 12(g) ...

(Pls.' Opp. 5, 6.) Plaintiffs contend that Defendants had ample opportunity to raise their opposition to Plaintiffs' RICO and antitrust claims at the same time that they opposed Plaintiffs' motion for leave—especially because both the current motion to dismiss and Defendants' opposition were both brought pursuant to Rule 12(b)(6).

■ However, the facts of the present case are not congruent with those circumstances for which Rule 12(g) was drafted. Based upon the statute's plain language, Rule 12(g) seeks to prevent successive motions that are similar in nature, when a party has an opportunity to bring all such concerns before the court at once. Plaintiffs point to Defendants' opposition to their motion for leave as a missed opportunity to raise all relevant concerns, but the statute is clearly directed only to the "party who makes a motion under this rule." F.R.C.P. 12(g). *Plaintiffs* filed the motion for leave in 2006, *Plaintiffs* initiated motion practice under Rule 12, and therefore, *Plaintiffs* are the parties to whom Rule 12(g) is directed. Defendants' filing was in opposition, and consequently does not constitute the filing of a motion under the Rule. As the 12(g) Committee Notes state, the Rule forbids *"a defendant who makes a preanswer motion under this rule* from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein"* (Pls.' Opp. 6, *citing Id.* (Comm. Notes 1966) (emphasis added).)

The precepts of Rule 12(g) are intended to address a party's initial motion filing, filed pursuant to a given rationale; as such, an application of the Rule to the Defendants in the present case would be misplaced. Defendants' motion stands and is therefore eligible for full review and discussion by the Court.

**4.**

Defendants argue that for various reasons, all set forth within their supporting documents, Plaintiffs have failed to properly allege their claims under The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961 et seq.

**4(a).**

■ This Court will first examine Defendants' contention that Plaintiffs' new RICO claims are merely unexhausted requests for reimbursement, for which they were already denied remedy under ERISA. Defendants maintain that Plaintiffs converted their rejected ERISA claims to RICO claims in an effort to avoid such a requirement, but that an exhaustion of remedies is mandated with respect to RICO claims as well. In support of their argument, Defendants rely heavily on *First Nationwide Bank v. Gelt Funding Corp.*:

> A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Furthermore, as a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite. Thus, a plaintiff who claims that a debt is uncollectible because of the defendant's conduct can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated.

27 F.3d 763, 768 (2d Cir.1994) (citations omitted). The Second Circuit's language clearly states that in order for a RICO claim to be actionable, a plaintiff must first frustrate all other contractual avenues available to remedy. Plaintiffs have failed to demonstrate in their FAC how in fact these other means of remedy have been frustrated.

In contrast, Plaintiffs cite to case law (namely, *In re Managed Care Litigation*, 185 F.Supp.2d 1310 (S.D.Fla.2002), from the Southern District of Florida) that is not controlling within this jurisdiction. (Pls.' Opp. 10.) Additionally, they argue that the *Gelt Funding* precedent is only applicable to circumstances involving third party debt: "when a plaintiff seeks damages from one party because of an unpaid debt of a *third party*, the claim is not ripe until the plaintiff can demonstrate that it has sought unsuccessfully to obtain payment from that third party." (Pls.' Opp. 11) (*citing Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 132 (2d Cir.2003) ("We conclude that the RICO claims based on a third-party's failure to pay on a debt are unripe.") (emphasis added).) This characterization is inaccurate.

In *Gelt Funding* itself, for example, the court stated that the doctrine applied where the debt owed was from one or more of the RICO defendants. *Id.* at 769, *citing Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166 (2d Cir.1993). In other instances, the standard is applied in cases involving alleged tort victims or defrauded parties. *See Denney v. Deutsche Bank, AG*, 443 F.3d 253, 266 (2d. Cir.2006) (involving plaintiffs who relied on allegedly fraudulent tax advice provided by defendants); *Fundacion Presidente Allende v. Banco de Chile*, 2006 WL 2796793, at *4 (S.D.N.Y. May 29, 2006) (involving victims of Chilean President Pinochet's crimes against humanity). The doctrine has even been applied in a case of insured plaintiffs bringing fraud claims against an insurance company. *See Dornberger v. Metro. Life Ins. Co.*, 961 F.Supp. 506, 521–2 (S.D.N.Y.1997).

Further, it has already been established that "RICO standing is a more rigorous matter than standing under Article III." *Denney* at 266 (citing *Lerner v. Fleet*

*Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003)). If the Second Circuit intended for its decisions in this line to be interpreted so narrowly, it would have explicitly said so in at least one of the cases within the line of prevailing case law. Plaintiffs' argument that the doctrine is only applicable in instances of third party debt lacks the requisite foundation.

■ Moreover, due to the potential treble damages that are available with each RICO claim brought, it is necessary to present a "clear and definite" monetary amount. In *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d. Cir.2006), the Second Circuit noted that

> [a]lthough the Denney complaint alleges direct harms to the class members arising from the same conduct that constitutes the alleged RICO violation, the complaint also acknowledges that the extent of damages to some class members is unknown. For example, some members may yet be assessed a penalty by the IRS. These class members thus fail to meet the 'clear and definite' damages element required for RICO standing.

*Id.* In the FAC, Plaintiffs refer to "hundreds of millions of dollars or more" that Plaintiffs were allegedly deprived of. (FAC ¶ 367.) This is obviously an estimate on Plaintiffs' part, and therefore neither clear nor definitive.

Plaintiffs have failed to meet the established standard within this jurisdiction required in order to bring a cognizable claim under RICO. For the foregoing reasons, Plaintiffs' RICO claims, inasmuch as they are based upon unexhausted requests for reimbursement, are dismissed now with leave for Plaintiffs to replead in order to provide both a showing of frustration of contractual rights to remedy and a clearly defined damages amount, within 30 days of completion of substantive discovery.

### 4(b).

■ RICO claims brought by Plaintiffs relating to injuries that occurred before July 15, 2000 are time-barred, according to Defendants, and therefore should be dismissed. This conclusion finds its support in a previous ruling made by this Court in 2006, *Am. Med. Ass'n v. United Healthcare Corp.*, 2006 WL 3833440, at *10 (S.D.N.Y. December 29, 2006). In that case, the Court determined that RICO claims based upon injuries prior to July 15, 2000 were time-barred, explaining that "Plaintiffs' original Complaint, which was filed on March 15, 2000 (over four years prior to the filing of Plaintiffs' proposed RICO Claims), expressed actual knowledge of injuries that occurred well before July 15, 2000." *Id.* at *9.

In accordance with this prior ruling, Defendants' motion to dismiss is granted as to Plaintiffs' RICO claims relating to injuries occurring prior to July 15, 2000.[5]

### 4(c).

"Under RICO, a 'pattern of racketeering activity' consists of 'at least two acts of racketeering activity' within a ten year period. Among the predicate acts enumerated in § 1961(1) are any acts of mail fraud indictable under the federal mail fraud statute, 18 U.S.C. § 1341, and any acts of wire fraud indictable under the federal wire fraud statute, 18 U.S.C. § 1343." *In re Sumitomo Copper Litiga-*

---

5. In their motion papers, Defendants attempt to extend this ruling to Plaintiffs' antitrust claims, but fail. The Court noted in that same 2006 decision that while Plaintiffs' RICO claims prior to July 15 were time-barred, their proposed antitrust claims were a "part of a continuing antitrust violation" such that even those "based on overt acts that occurred after July 15, 2000 are therefore not time-barred." *Am. Med. Ass'n v. United Healthcare Corp.*, 2006 WL 3833440, at *8 (S.D.N.Y. December 29, 2006).

*tion,* 995 F.Supp. 451, 454 (S.D.N.Y.1998) (citations omitted). Regarding Plaintiffs' RICO claims based upon predicate acts of alleged mail and wire fraud, Defendants offer various explanations as to why these claims should be dismissed.

### 4(c)(1).

■ First, Defendants argue that these mail/wire fraud claims must be dismissed because Plaintiffs have been unable to demonstrate the requisite reliance upon Defendants' alleged misrepresentations and omissions. (Defendants' Brief ("Defs.' Br.") 13.) A recent decision by a unanimous Supreme Court however, entirely contradicts Defendants' argument. "The question presented in this case is whether a plaintiff asserting a RICO claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations. Because we agree with the [Seventh Circuit] Court of Appeals that a showing of first-party reliance is not required, we affirm." *Bridge v. Phoenix Bond & Indem. Co.,* 533 U.S. ——, 128 S.Ct. 2131, 2134, 170 L.Ed.2d 1012 (2008). According to the U.S. Supreme Court, reliance is not a requirement in order to demonstrate mail fraud (or, by logical extension, wire fraud) under RICO, and Defendants' argument for dismissal is therefore denied.

### 4(c)(2).

■ Defendants also maintain that under the strict pleading requirements of Federal Rule 9(b), Plaintiffs' mail/wire fraud claims should be dismissed. The statute reads in pertinent part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." F.R.C.P. 9(b). "Rule 9(b) is designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits." *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987). In striving to achieve these goals, a heightened pleading requirement results, mandating that "the complaint ... adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) (affirming dismissal of RICO claims).

Defendants maintain that Plaintiffs offer "conclusory RICO allegations [that] fail to satisfy these stringent pleading requirements." (Defs.' Br. 17.) While this statement may be relevant with respect to allegations of fraudulent mailings *per se,* Plaintiffs delineate within their opposition that they instead allege that the mails and wires were used in furtherance of a scheme to defraud. (Pls.' Opp. 23.)

■ Allegations said to be in furtherance of fraud are held to a different pleading standard entirely: "18 U.S.C. § 1341 prohibits the use of the mails in furtherance of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mechanical, Inc.,* 886 F.Supp. 1134, 1143 (S.D.N.Y.1995) (citation omitted). Southern District courts have previously articulated the different requirements in either a *per se* or "in furtherance of fraud" context:

> In cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading informa-

tion themselves. In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b).

*In re Sumitomo Copper Litigation, supra,* at 456 (citation omitted); *see also Aiu Ins. Co. v. Olmecs Medical Supply, Inc.,* 2005 WL 3710370, *11 (E.D.N.Y. February 22, 2005) (for RICO claims alleging mailings in furtherance of fraud, plaintiff must "delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme" in order to satisfy Rule 9(b)) (citations omitted).

This Court finds that Plaintiffs have adequately alleged the details of an overall fraud scheme(s) in this case: the Fee Schedule Database Scheme (FAC ¶¶ 46–8, 97–115, 124–6, 129–41), and the Stale Data and Cover–Up Schemes (FAC ¶¶ 151–6). Particularity as to the mailings themselves is unnecessary in this context.

▮▮▮ Defendants also maintain that the New York federal courts have consistently dismissed RICO claims, under Rule 9(b), where the purported predicate acts of mail fraud constituted nothing more than routine business communications. (Defs.' Br. 20, *citing, O'Malley v. NYCTA,* 896 F.2d 704, 707 (2d Cir.1990); *Atl. Gypsum Co., Inc. v. Lloyds Int'l Corp.,* 753 F.Supp. 505, 513 (S.D.N.Y.1990).) Since the mailings Plaintiffs cite in furtherance of fraud are Explanation of Benefits letters ("EOBs") that are routinely used in order to inform plan participants of benefit determinations, Defendants argue for dismissal of Plaintiffs' RICO claims based upon alleged mail/wire fraud predicate acts.

▮▮▮ A document serving as a basis for the predicate acts requirement under RICO must have content sufficient to provide a "reasonable inference of fraudulent

intent." *Atl. Gypsum Co., Inc. v. Lloyds Intern. Corp., supra,* at 513. While it is true that Second Circuit courts have dismissed such claims when based upon routine and innocuous documents, *see O'Malley, supra,* the EOBs in this case are alleged to have contained various omissions and misrepresentations that would render their contents far from innocuous. Plaintiffs allege and also specify these omissions and misrepresentations in various paragraphs of the FAC. (*see* Pls.' Opp. 25–26; FAC¶¶ 129–41, 150–3, 161–2, 165–6, 170–1, 176, 180, 184, 188, 191–5.) These allegations are adequate to provide a reasonable inference of fraudulent intent.

Based upon all of the information provided, Plaintiffs have adequately met their pleading requirement with respect to their mail/wire fraud claims under Rule 9(b); as such, Defendants' motion for dismissal on that ground is denied.

### 4(d).

▮▮▮ In Count XVIII of the FAC, Plaintiffs allege that United Healthcare converted plan assets when it made or caused to be made false payment on claims for reimbursement of out of network ("ONET") charges, in violation of 18 U.S.C.A. § 664. Section 664 reads:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

18 U.S.C.A. § 664. Defendants maintain that Plaintiffs' RICO claims, based on Section 664 of the Act, should also be dismissed under Rule 9(b).

While on its face Rule 9(b) only speaks to "alleg[ations] of fraud or mistake," prevailing case law has extended this heightened scrutiny to Section 664 inquiries, as well:

Plaintiffs' allegations of embezzlement are subject not to the more stringent standard of pleading of Rule 9(b), but rather to the more lenient standard of Rule 8 of the Federal Rules of Civil Procedure. Nevertheless, because the principles and policies underlying Rule 9(b) as it relates to fraud claims applies [sic] equally to all civil RICO claims, not just claims based on allegations of fraud, I find that it is necessary for me to scrutinize closely plaintiffs' allegations of embezzlement to determine whether they meet pleading requirements.

*Greenes v. Empire BC & BS*, Civ. No. 92–8599, 1996 WL 640873, at *6 (S.D.N.Y. November 4, 1996). *Cf. Philan Ins. Ltd. v. Frank B. Hall & Co., Inc.*, 712 F.Supp. 339, 344 (S.D.N.Y.1989) (holding that Rule 9(b) governs pleading of any predicate acts within civil RICO conspiracy); *Plount v. American Home Assurance Co., Inc.*, 668 F.Supp. 204, 206–07 (S.D.N.Y.1987) (same).

Plaintiffs contend that if Rule 9(b) applies, it is only to the extent applicable to mail/wire fraud in the "in furtherance of fraud" context, i.e., meaning that Plaintiffs need only allege the overall fraud scheme with particularity—and need not describe the specific details relating to the Section 664 claims. However, the Court did not find any case law supporting this assertion. Based upon the foregoing, it is clear that Plaintiffs must provide sufficient details relating to the Section 664 claims in order to pass muster under Rule 9(b)'s heightened scrutiny requirement. Plaintiffs maintain that they have done so within the FAC; the Court agrees.

As previously mentioned, Rule 9(b) was designed with the goal of affording defendants adequate notice of the allegations they are accused of, based upon the sufficiency of a plaintiff's pleading of those allegations. *See DiVittorio v. Equidyne Extractive Industries, Inc., supra,* at 1247. In paragraph 379 of the FAC, Plaintiffs effectively give Defendants notice of what funds they allegedly converted unlawfully and when these unlawful conversions occurred. (FAC ¶ 379.) Despite Defendants' contention that they failed to identify any plan assets designated for paying benefits to plan members (Defs.' Br. 22.), Plaintiffs delineate "plan funds *specifically earmarked as guaranteed benefits for the Section 664 Plaintiffs and the Section 664 Class on each and every occasion upon which UH made or caused to be made a false payment on claims for reimbursement of out-of-network charges ...*" (FAC ¶ 379(a) (emphasis added).) They also specify the means by which this unlawful scheme was executed on the part of Defendants. (*See* FAC ¶ 379(b-c).) Based upon this information, and additional details contained within paragraphs 371–97 of the FAC, the Court finds Plaintiffs have provided details sufficient to give Defendants adequate notice under Rule 9(b). Defendants' motion to dismiss Plaintiffs' Section 664 claims under Rule 9(b) is therefore denied.

### 4(e).

Further, Defendants seek to dismiss Plaintiffs' federal RICO claims for declaratory and injunctive relief pursuant to Section 1964 of RICO. Section 1964 has three subsections, but for purposes of the motion, the Court will focus upon subsection (a):

The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders,

including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

18 U.S.C.A. § 1964(a).

Subsection (b) grants the Attorney General the right to seek injunctive relief under the statute, and subsection (c) grants private litigants the right to seek damages under the statute. *Id.* Defendants contend that the plain language of subsection (a) does not grant private litigants the right to seek injunctive relief under the statute; Plaintiffs, conversely, argue that the right to such relief is expressly authorized within subsection (a). (*See* Defs.' Br. 23; Pls.' Opp. 29.) Based upon existing case law as well as the plain language of the statute itself, the Court agrees with Defendants.

As it now stands, no Court controlling within this jurisdiction has recognized a right to injunctive relief for private litigants under Section 1964(a) of RICO— with one exception: *Motorola Credit Corp. v. Uzan,* 202 F.Supp.2d 239, 242 (S.D.N.Y. 2002) (Rakoff, J.), *rev'd. on other grounds,* 322 F.3d 130 (2d Cir.2003). Significantly, however, this case (as well as, *NOW, Inc. v. Scheidler,* 267 F.3d 687(7th Cir.2001), *rev'd. on other grounds,* 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), the 7th Circuit precedent upon which it was based) was reversed on other grounds and is no longer considered good law.

Further, the Second Circuit, though it has never ruled directly on this issue, has explicitly stated on two separate occasions that were it to ever adjudicate the matter, it would likely find that no injunctive relief exists for private litigants under Section 1964. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 741 F.2d 482, 489 n. 20 (1984), *rev'd. on other grounds,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("While post-enactment legislative history is not by any means conclusive, it cannot merely be ignored. It thus seems altogether likely that § 1964(c) as it now stands was not intended to provide private parties injunctive relief.") (citations omitted); *Trane Co. v. O'Connor Secs.,* 718 F.2d 26, 28–9 (2d Cir.1983) ("[I]t should be noted that courts which have confronted the issue have expressed serious doubt concerning the propriety of granting injunctive relief under any circumstances to private parties … We have the same doubts as to the propriety of private party injunctive relief …") (citations omitted).

Moreover, the Court looks to the plain language of the statute for additional guidance. Plaintiffs contend that an *explicit grant of injunctive remedy* is afforded to private litigants by subsection (a), but the statutory language contains nothing explicit to that effect. *See* 18 U.S.C.A. § 1964(a), *supra.* The Supreme Court has long held that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). This ideology works congruently with another long-standing rule, cautioning that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval,* 532 U.S. 275, 290, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Taken together here, if Congress expressly granted private litigants a right to seek

damages under the statute, while remaining taciturn about a private litigant's ability to seek injunctive relief, this Court can neither infer a meaning that is unexpressed, nor ignore Congress's seemingly willful silence on the matter.

Based upon the weight of Second Circuit authority and Congress's failure to address the issue within the statutory language itself, this Court will not infer that the right to injunctive and declaratory relief exists for private litigants under Section 1964 of RICO. Defendants' motion to dismiss these claims is hereby granted.

### 5.

Additionally, Defendants argue that the antitrust claims brought Plaintiffs should be dismissed. They proffer various rationales for dismissal, each of which the Court will now discuss.

### 5(a).

First, Defendants maintain that Plaintiffs have failed to adequately allege their antitrust claims. In particular, Defendants point to their allegations of plausible conspiracy, the relevant geographic market, and the requisite level of market power as being insufficient and worthy of dismissal.

### 5(a)(1).

The Supreme Court in *Twombly* found that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id., supra,* at 1974. Without some level of "factual enhancement," a "naked assertion of conspiracy in a § 1 complaint" does not plausibly suggest a preceding agreement, and the "prospect of unearthing direct evidence of conspiracy" is insufficient to justify proceeding past pleading stage. *Id.* at 1966, 1968–9. The Court will now examine each allegation made by Plaintiffs, in order to determine if it passes muster under Rule 12(b)(6) and meets the pleading standards outlined in *Twombly*.

In order to successfully allege conspiracy, *Twombly* requires that a plaintiff provide "specific time(s), place(s), or person(s) involved in the alleged conspiracies." *Id.* at 1970, n. 10. It is well established that "[s]olely pleading opportunities to conspire is not sufficient to support a claim of actual conspiracy." *Capital Imaging Assoc., P.C. v. Mohawk Valley Med. Assocs., Inc.,* 996 F.2d 537, 545 (2d Cir. 1993).

Plaintiffs easily satisfy the requisite pleading standard with respect to their allegation of conspiracy. In fact, the FAC is replete with factual support—including specific times, places, and persons—for the conspiracies alleged. To quote directly Plaintiffs' Opposition Brief, the FAC alleges that: "an association of health insurance companies created a database in 1973 that it expressly disclaimed for use in making UCR determinations" (FAC ¶¶ 97–102, 107–109 and 114); in turn, "[t]hese health insurers, including United Healthcare, use the database for making UCR determinations in direct violation of their contractual requirements to their respective subscribers to pay the lower of the actual charge or the usual and customary charge" (FAC ¶¶ 108, 114 and 213–4); the UCR rates are inaccurate and lower than the actual rate due to the use of flawed data (FAC ¶¶ 46–48, 131–144); "supposedly competing health insurers, comprising the HIAA Group ("Health Insurance Association of America"), had representatives sitting on the HIAA committees overseeing the development [ ... ] of the PHCS database and made decisions to allow data suppliers to submit flawed and inadequate data" (FAC ¶¶ 98–102); and "in 1998 HIAA allowed a health insurer, United Healthcare, to acquire the PHCS database after it had already acquired the only other competing

database" (FAC ¶¶ 39–40). This Court could go on to quote further from Plaintiffs' Opposition Brief and the numerous factual references found in the FAC, but the conclusion is already apparent. Plaintiffs' allegations are fully developed in the FAC and bolstered by a plethora of factual details which support their conspiracy claims.

 Defendants also contend that Plaintiffs' failure to provide evidence that Defendants were acting contrary to their "independent business interests" is somehow tantamount to an inadequate pleading. *AD/SAT, A Division of Skylight, Inc. v. Associated Press,* 181 F.3d 216, 235 (2d Cir.1999). But this is not a widely recognized requirement of a Rule 12(b)(6) inquiry. In fact, in the case cited, the court was deciding a motion for summary judgment—utilizing a standard completely different from the one presently at work in this case. Defendants' other argument, that Plaintiffs fail to provide a rationale for Defendants conspiring with HIAA to reduce out-of-network reimbursements, is also beyond the parameters of the *Twombly* requirements, already articulated above.

### 5(a)(2).

 In order to establish a rule of reason violation,[6] Plaintiffs must give notice of the market(s) that Defendants have allegedly restrained. *Daniel v. Am. Bd. of Emergency Med.,* 802 F.Supp. 912, 926 (W.D.N.Y.1992), "However, the definition of the relevant market is a question of fact to be determined in the context of each case. An antitrust complaint may be dismissed where the market alleged is too vague and too broad to explain what market the plaintiff is alleging to have been monopolized." *Id.* (citations omitted).

The Court finds that Plaintiffs do give adequate notice here. In the FAC, Plaintiffs refer to the numerous "local markets" in which the United Defendants currently provide their services. (Pls.' Opp. 40; FAC ¶¶ 215–221.) As the minimal requirement here is merely that Plaintiffs provide notice of the markets being targeted, and not that they provide specific definitions of each market, Plaintiffs have met the minimum threshold. While a complaint may be dismissed if the geographic market is "too broad to explain what market the plaintiff is alleging to have been monopolized," the notice that Plaintiffs provide here is sufficient and does not require additional explanation. *Daniel v. Am. Bd. of Emergency Med.* at 926. Defendants are intimately familiar with all local markets in which they operate and provide their services. Despite the numerosity of markets implicated, for purposes of subsequent motions, discovery, and/or trial, Defendants have sufficiently been put on notice as to the areas where violations have allegedly occurred.

 "The rule of reason is designed and used to ascertain whether transactions are anticompetitive or procompetitive." *Leegin Creative Leather Products, Inc. v. PSKS, Inc.* — U.S. —, —, 127 S.Ct. 2705, 2709, 168 L.Ed.2d 623 (2007). An additional component of a rule of reason analysis is to determine whether Plaintiffs have adequately alleged Defendants' market power with specificity. *Id.* "Market power is defined as the power to raise prices significantly above the competitive

---

**6.** Although Defendants' brief also posits that Plaintiffs failed to adequately allege a *per se* antitrust violation, Plaintiffs' opposition brief is silent as to this issue. Since Plaintiffs did not speak to the *per se* violation arguments, the Court will assume for purposes of this motion that Plaintiffs intended to allege a rule of reason violation *only,* and will not address the *per se* violation requirements.

level without losing all of one's business." *Kasada, Inc. v. Access Capital, Inc.*, 2004 WL 2903776, *8 (S.D.N.Y. December 14, 2004); *see also CDC Technologies, Inc. v. IDEXX Laboratories, Inc.*, 186 F.3d 74, 81 (2d Cir.1999). In pleading market power adequately, a plaintiff must offer more than mere conclusory statements about a defendant's buying power. *Id.*

■ Plaintiffs have met this burden by alleging that "in 1998 HIAA allowed a health insurer, United Healthcare, to acquire the PHCS database after it had already acquired the only other competing database" (FAC ¶¶ 39–40), thereby "eliminating competition regarding UCR reimbursement and the development of a competing UCR database, [and] suppress[ing] the amount of payments made to subscribers [and] the price of medical services" (FAC ¶¶ 117–144). (*See also* Pls. Opp. 33–4.) Plaintiffs include supporting facts with the allegations made in the complaint, rendering each one adequate and non-conclusory.

Based upon the foregoing analysis, Plaintiffs have sufficiently alleged a rule of reason antitrust violation; Defendants' motion to dismiss Plaintiffs' antitrust claims is denied.

### 5(b).

■ Next, Defendants contend that AMA and Physician Plaintiffs' claims, all seeking relief under Sections 4 and 16 of the Clayton Act, should be dismissed due to a lack of standing. (*See* FAC ¶ 344.) In arguing their point, Defendants focus heavily on Section 4 of the Clayton Act, which offers a more rigorous standing requirement than that of Section 16. To that end, the Supreme Court duly noted that "[a] showing of antitrust injury is necessary, but not always sufficient, to establish standing under § 4 [of the Clayton Act], because a party may have suffered antitrust injury but may not be a proper

plaintiff under § 4 for other reasons." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n. 5, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986).

However, Plaintiffs concede, in direct contrast to ¶ 344 of the FAC, that they are now seeking relief under Section 16 alone—and not under Section 4. The Court acknowledges this concession and will proceed with a standing analysis pursuant only to Section 16.

■ In a determination of standing, federal courts typically consider: (i) a causal connection between antitrust violation and the plaintiff's alleged harm; (ii) the nature of the alleged injury; (iii) the directness of the alleged injury and whether damages are speculative; (iv) the potential for duplicative recovery and whether apportionment of damages would be too complex; and (v) the existence of more direct victims. *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 at 537–544, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Triple M Roofing Corp. v. Tremco, Inc.*, 753 F.2d 242, 247 (2d Cir.1985).

Defendants contend that the AMA and Physician Plaintiffs' antitrust claims are both indirect and highly speculative. (Defs.' Br. 37.) In particular, they cite a "long chain of events that would have had to occur" in order for Plaintiffs to be injured by an alleged antitrust violation. (Defs.' Br. 38.) Defendants reason that Subscriber and Empire Plan Plaintiffs are more aptly suited to bring claims in this instance, as their harm is more direct and provides a basis for the less direct potential harm suffered by AMA and Physician Plaintiffs. The Court disagrees.

■ While the injury suffered by Subscriber and Empire Plan Plaintiffs may be more direct than that of AMA and

Physician Plaintiffs, the Court does not find the latter group's claim to be indirect or speculative. When seeking relief under Section 16 of the Clayton Act, plaintiffs do not have to show actual injury, but in the alternative may "allege 'threatened loss or damage by a violation of the antitrust laws ...' Instead, to pursue a claim for injunctive relief under Section 16 a plaintiff must 'demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Am. Med. Ass'n v. United Healthcare Corp.*, 2007 WL 683974, *5 (S.D.N.Y. March 5, 2007) (citations omitted).

 Evidence of a significant threat of injury is sufficient in successfully alleging an antitrust violation under Section 16. In particular, Plaintiffs point to: the "expenses [ ... ] borne directly by physicians through assignments of benefit claims"; losses that physicians must cover "when the subscribers are unable to pay" for services rendered; and the loss of patients who "stop using ONET providers to avoid such out-of-pocket expenses." (Pls. Opp. 43.) Plaintiffs have adequately established that if the antitrust activity alleged were to occur, it would create a potential risk of harm to AMA and Physician Plaintiffs.

 Additionally, Defendants maintain that awarding Plaintiffs damages for these claims would open the door to "the potential for duplicative recovery," another factor that the Court must consider in determining whether a plaintiff has standing with respect to an antitrust claim. *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, supra.* This issue would be relevant for claims seeking relief under Section 4 (where treble damage awards are possible). However, Plaintiffs instead seek relief under Section 16 where

the only remedy available is equitable in nature, and [ ... ] "the fact is that one injunction is as effective as 100, and concomitantly, that 100 injunctions are no more effective than one." Thus, because standing under § 16 raises no threat of multiple lawsuits or duplicative recoveries, some of the factors [ ... ] that are appropriate to a determination of standing under § 4 are not relevant under § 16.

*Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110, n. 6, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986) (citation omitted). In the instant litigation therefore, there is no risk of Defendants being punished duplicatively for the same offense, because Plaintiffs seek only injunctive relief.

Based upon the foregoing, AMA and Physician Plaintiffs have survived the standing inquiry under Section 16; Defendants' motion to dismiss their claims is denied.

### 6.

Next, this Court will consider Defendants' motion to dismiss claims brought by various Plaintiffs under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1001, et seq.

### 6(a).

First, Defendants argue that Provider Plaintiffs fail to specify any of the assigned claims for which they now seek unpaid benefits pursuant to ERISA, and that as a result, their claim should be dismissed. In opposition, Plaintiffs contend that all relevant Provider claims were amended in accordance with this Court's previous ruling on June 23, 2007, and therefore, that Defendants' motion should be denied. According to Plaintiffs, the complaint "specif[ies] that the only assigned claims which entitled them to receive unpaid benefits are those that have been exhausted." (Pls.' Opp. 45.)

In particular, Plaintiffs lean upon the Court's previous language stating that their "failure to produce written assignments for the majority of their claims during Stage One discovery does not preclude their proving the existence of those assignments by some other means during trial. Defendants have failed to meet their burden ..." *Am. Med. Ass'n v. United HealthCare Corp.*, 2007 WL 1771498, *17 (S.D.N.Y. June 18, 2007).

However, while this language may have held true in a prior adjudication, it is inapplicable in the current context. The previous ruling concerned a motion for summary judgment, and not one for dismissal as in the instant litigation. In that context, a different standard was applied and different considerations were at work. The factors that necessitate a claim's survival of a summary judgment inquiry (i.e., that there is a relevant issue of material fact) differ greatly from those of a motion to dismiss analysis (which seeks proof that a claim has been adequately alleged, such that, on the basis of said allegations, relief may granted).

■■■ In addition, the relevant case law within this jurisdiction unequivocally confirms Defendants' position that "a blanket assertion of exhaustion of administrative remedies in a complaint is insufficient to withstand a motion to dismiss." (Defs.' Reply 24.) *See Hoffman v. Empire Blue Cross & Blue Shield*, 1999 WL 782518, at *13 (S.D.N.Y. Sept.30, 1999) (holding that allegations of exhaustion of administrative remedies which are "baldly asserted without any elaboration" are insufficient). In the present case, Plaintiffs fail to identify the specific assigned claims which were exhausted and therefore in accord with the requirements under ERISA. Such an assertion of exhaustion, without factual support, is inadequate and cannot support Physician Plaintiffs' claims for unpaid ben-

efits. Defendants' motion to dismiss is granted as to these claims.

### 6(b).

■■■ Defendants also seek dismissal of Plaintiffs' claims to relief due to Defendants' alleged failure to conduct a "full and fair review" of their claim decisions as required by ERISA.

This Court has twice considered and twice rejected these claims. In both decisions, the Court determined that Defendants had provided information sufficient to constitute a "full and fair review" under ERISA, and therefore, Plaintiffs' exhaustion requirement could not be waived on grounds of futility. *Am. Med. Ass'n v. United HealthCare Corp.*, 2007 WL 1771498, *supra*, at *9; *see also Am. Med. Ass'n v. United Healthcare Corp.*, 2007 WL 2457358, at *1 (S.D.N.Y. August 23, 2007) ("procedures in effect at the time of Plaintiffs' appeals ... did not preclude Plaintiffs' claims from receiving full and fair review"). Plaintiffs argue now, however, that although the prior adjudications found that the exhaustion requirements were not waived, these claims were still preserved for determinations on the merits. This is an inaccurate rendering of this Court's words. While the issue of Defendants' failure to disclose is indeed "at the heart of this litigation", it will only be explored to the extent of those claims that have survived all pre-trial motions. *Am. Med. Ass'n v. United HealthCare Corp.*, 2007 WL 1771498, *supra*, at *9.

Plaintiffs' exhaustion requirement was not waived and as a result, their unexhausted ERISA claims did not survive this Court's last ruling. There is, therefore, nothing left to adjudicate on the merits with respect to these claims because they are no longer viable. Further, 29 C.F.R. section 2560.503–1 states that the only remedy available under such a claim is

that "a claimant shall be deemed to have exhausted the administrative remedies available under the plan." (D's Reply Br. 26). It has already been determined that the exhaustion requirement was not waived with respect to any of Plaintiffs' unexhausted ERISA claims, so even if this Court were to preserve these claims, the remedy available under the regulation would be inapplicable.

Based upon the foregoing, Defendants' motion to dismiss Plaintiff's "full and fair review" claims is hereby granted.

### 6(c).

■ Defendants next argue that Subscriber Plaintiffs' claims procedure claim under ERISA should be dismissed due to a lack of standing. In Count VII of the FAC, Subscriber Plaintiffs assert that Defendants failed to comply with the claims procedure requirements contained in 29 C.F.R. § 2560.503–1 by "discouraging appeals, omitting required or material information from communications with subscribers, and otherwise engaged in conduct that rendered its claim procedures and appeals process unfair to subscribers." (FAC ¶ 294; Defs.' Br. 42.) They seek declaratory and injunctive relief, including an injunction to compel Defendants' compliance with the regulation. However, based upon the facts in this case compliance cannot be compelled.

■ The Department of Labor ("DOL") regulation with which Plaintiffs seek compliance has since been superceded by a new regulation which became effective in 2002. See 29 C.F.R. sect. 2560.503–1(o). Compelling compliance with a now defunct regulation would be nonsensical and certainly beyond the reach of this Court. See Am. Med. Ass'n v. United HealthCare Corp., 2007 WL 1771498, supra, at *10; Granite State Outdoor Adver., Inc. v. Town of Orange, Conn., 303 F.3d 450, 451–2 (2d Cir.2002). Plaintiffs contend that the issue of compliance with the pre–2002 regulation goes to "the standard of review applicable to Defendants' UCR benefit determinations." (Pls.' Opp. Br. at 48.) Even if this is true, it does not create a free-standing claim for injunctive relief powerful enough to compel Defendants' adherence to a now defunct regulation (Defs.' Reply Br. 27.)

Further, Plaintiffs lack the standing needed to compel Defendants' compliance with the new regulation effectuated in 2002. Each of Plaintiffs' ERISA appeals occurred prior to 2002. Therefore, they could not have suffered any injury-in-fact as a result of failure to comply with a 2002 standard because that regulation did not exist and had yet to become effective. Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir.2005).

Defendants' motion to dismiss the Subscriber Plaintiffs' ERISA Claims Procedure claims is hereby granted.

### 7.

Based upon the foregoing analysis, Defendants' motion to dismiss is GRANTED in part, and DENIED in part. It is GRANTED with respect to Plaintiffs' RICO claims occurring before July 15, 2000, Plaintiffs' RICO claims for Declaratory and Injunctive Relief under Section 1964, Provider Plaintiffs' Unpaid Benefits ERISA claims, Plaintiffs' "Full and Fair Review" ERISA claims, and Subscriber Plaintiffs' ERISA Claims Procedure claims. Defendants' motion is DENIED with respect to Plaintiffs' antitrust claims occurring before July 15, 2000, Plaintiffs' predicate acts claims under RICO (including both the mail/wire fraud and Section 664 claims), and Plaintiffs' antitrust claims (including AMA and Physician Plaintiffs' antitrust claims).

Further, Defendants' motion is GRANTED with respect to Plaintiffs' RICO claims based upon unexhausted requests for reimbursement. Plaintiffs are permitted leave to replead in order to provide the Court with both factual allegations showing frustration of contractual rights to remedy, and a clearly defined damages amount, within 30 days of completion of substantive discovery.

SO ORDERED.