# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2347
_____

Riley Johannessohn; Daniel C. Badilla; James Kelley; Kevin R. Wonders; William
Bates; James Pinion, individually and on behalf of others similarly situated

*Plaintiffs - Appellants*

v.

Polaris Industries Inc.

*Defendant - Appellee*

_____

State of Minnesota

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: April 13, 2021
Filed: August 20, 2021

_____

Before KELLY, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Appellants filed this putative class action alleging that Polaris Industries, Inc. failed to disclose heat defects and that this artificially inflated the price of their all-terrain vehicles. The district court[1] denied class certification because individualized questions predominated, a class action was not a superior method for litigating, and the putative classes included members who lacked standing. We affirm.

I.

Polaris makes ATVs. About 15 years ago, it began receiving consumer complaints about excessive heat in its ATVs. In 2014, the U.S. Consumer Product Safety Commission started investigating reports of several ATV fires. The CPSC preliminarily found that one model presented a "substantial product hazard" under 15 U.S.C. § 2064(a) because "the right hand side heat shield is in close proximity to, and in some cases makes contact with [the] exhaust manifold, posing a burn and fire hazard." D. Ct. Dkt. 336-23 at 2. The CPSC requested that Polaris voluntarily recall or correct the problem. In March 2017, Polaris recalled two models. CPSC also reviewed two other models, and Polaris issued a service advisory in July 2017 offering owners a close off kit to fix the problem.

Appellants bought Polaris ATVs. They sued, alleging that Polaris failed to disclose the heat defect, which "artificially inflated the market price for ATVs." D. Ct. Dkt. 66 at 2. Six plaintiffs in six states sought to certify a nationwide class under Minnesota consumer protection laws for consumers who purchased new (1) MY (Model Year) 2016–17 Sportsman 450s; (2) MY2014–17 Sportsman 570s; (3) MY2009–16 Sportsman 850s; and (4) MY2015–2016 Sportsman 1000s. Alternatively, they asked the district court to certify six statewide classes for ATV owners in California, Florida, Minnesota, Missouri, New York, and North Carolina, under the laws of each state.

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

The district court denied the motion for class certification for three reasons. First, the putative classes included plaintiffs who did not suffer an injury. Second, questions involving individual members predominated over questions of law or fact common to class members. Finally, the district court found that a class action was not superior to individualized methods of adjudication. The plaintiffs appealed.

## II.

To certify a class, a district court must find that the plaintiffs satisfy all the requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of Rule 23(b). *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 403 (8th Cir. 2019). "The district court has broad discretion to decide whether certification is appropriate." *Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015) (citation omitted). We review a district court's denial of class certification for abuse of discretion. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1004 (8th Cir. 2004).

## A.

Appellants tried to certify the classes under Rule 23(b)(3). Rule 23(b)(3)'s predominance requirement requires courts to ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (citation omitted) (cleaned up). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, and goes to the efficiency of a class action as an alternative to individual suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016) (citations omitted) (cleaned up).

In *In re St. Jude Medical, Inc.*, we held that a district court abused its discretion by certifying a class of plaintiffs that alleged material misrepresentations concerning heart valve replacements in violation of the Minnesota Consumer Fraud Act. 522 F.3d 836, 841 (8th Cir. 2008). We noted that fraud cases are ill-suited for class actions because they require individualized findings on whether the plaintiffs actually relied on the alleged misrepresentation. *Id.* at 838. The defendants there put on evidence showing that the plaintiffs did not remember whether their doctors mentioned the unique qualities of the valve. *Id.* at 839. Considering this rebuttal evidence, we held that individual issues predominated over common questions. *Id.* at 841.

The same is true here. Plaintiffs' nationwide class action complaint alleges violations of the MCFA, so rebuttal evidence is permitted. *See St. Jude*, 522 F.3d at 840. Polaris has evidence challenging how much each consumer-plaintiff relied on the alleged omissions. It showed that some of the named plaintiffs are previous Polaris owners who bought new ATVs despite earlier experiences with the alleged defect. A couple of these owners tried to sell their ATVs to third parties and said they were in excellent condition—without mentioning a heat defect. While a jury is free to reject this evidence, Polaris may present it. This will require individualized findings on reliance and is likely to make for multiple mini-trials within the class action. Because these fact issues will predominate, the district court was within its discretion to deny the motion for class certification on this basis.

B.

Appellants also argue that the district court should have certified six state-wide classes for the states of California, Florida, Minnesota, Missouri, New York, and North Carolina. But at least two[2] of these proposed classes—Minnesota and

---

[2]Appellants take issue with the district court's ruling that individualized fact issues would predominate in the California class. Whether the California Unfair Competition Law requires a showing of reliance is "uncertain." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010); *compare Cohen v. DIRECTV,*

-4-

North Carolina—require individualized fact findings on the issue of reliance. *See St. Jude*, 522 F.3d at 838–39 (MCFA requires a showing of reliance); *see also Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 781 S.E.2d 1, 7 (N.C. 2015) (affirming dismissal of claim under North Carolina Unfair and Deceptive Trade Practices Act because "plaintiffs have failed to sufficiently allege justifiable reliance on any omission"). Consistent with our holding above, we agree with the district court that those two statewide classes have individual questions that predominate.

C.

The Appellants say that even if classes could not be certified as Minnesota and North Carolina classes, the district court could have certified class actions for the remaining four states. Under Rule 23(b)(3), even if common questions predominate, a class can only be certified if the district court finds "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The district court did not abuse its discretion by denying class certification for superiority reasons. The district court found that class action was not superior because the underlying issues in the case "would present a significant risk of jury confusion and would create enormous challenges to trial management." D. Ct. Dkt. 453 at 83. This was based on the observation that the proposed classes will require application of the laws of four different states to forty-three different vehicle configurations, including at least four different engines, with changing exhaust standards through the years, and various attempts by Polaris to remedy the problems.

---

*Inc.*, 101 Cal. Rptr. 3d 37, 49 (Cal. Ct. App. 2009) (affirming denial of class certification because of individualized showings of reliance), *with Mass. Mut. Life Ins. Co. v. Superior Court*, 119 Cal. Rptr. 2d 190, 197 (Cal. Ct. App. 2002) (noting that the fact that "a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones"). Today, we conclude simply that fact issues might present themselves in the California cases.

But those are not the only concerns here. If the lead plaintiffs are any indication, a sizable portion of Polaris owners have resold their ATVs, and these sales "may have reflected different discounts that could require vehicle-specific litigation." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002).

Appellants argue that they have solved some of these problems by producing expert testimony on the price premium paid by purchasers, and so no individualized findings are needed. But cases are not tried on the evidence of one party. Polaris would be entitled to present contrary evidence suggesting the price premium theory does not appropriately provide proper damages figures for each specific class member. The district judge would then need to weigh how to instruct the jury to take these differing theories into account, especially as they relate to different state laws applying to different model years, different vehicle configurations, and different recall efforts. The district court was uniquely positioned to assess these management concerns and it was within its discretion to deny class certification on this basis.

Appellants also say that the district court focused too much on manageability, ignoring the other factors in Rule 23(b)(3). They argue that concentrating the litigation would be valuable to the individual class members because of the relatively small amount of individual damages and that Minnesota is the ideal venue for litigation because it is where Polaris is at home. We do not discount either of these interests. We assume Polaris would prefer to litigate (whether individually or on a class-wide basis) in Minnesota. But these interests do not outweigh the monumental manageability concerns. The putative classes simply seek to consolidate too many claims with too many variables. The district court was well positioned to weigh this, and the record supports its superseding concern that the litigation would be unmanageable. *See Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70–72 (4th Cir. 1977) (extreme manageability concerns precluded certification); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009) (suggesting manageability issues alone "likely" show superiority was not met); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) ("While Rule 23(b)(3) sets out four individual

factors for courts to consider, manageability is, by the far, the most critical concern in determining whether a class action is a superior means of adjudication.") (citation omitted).

## III.

There is a more fundamental problem here. "Although federal courts do not require that each member of a class submit evidence of personal standing, a class cannot be certified if it contains members who lack standing." *Avritt*, 615 F.3d at 1034 (citation omitted). "A class must therefore be defined in such a way that anyone within it would have standing." *Id.* (citation omitted). "If members who lack the ability to bring a suit themselves are included in a class, the court lacks jurisdiction over their claims." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (citation omitted).

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* To satisfy Article III standing, a plaintiff must show (1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (citation omitted). "It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) (citation omitted).

Appellants did not define their class to make sure all proposed members have standing. While Appellants seek to certify classes for everyone who bought the

models in question, evidence at the class certification stage shows that not all of the ATVs manifested the alleged heat defect. For example, Polaris employee Robin Stroot said that the panels on his own Sportsman 850 did not melt—the key defect manifestation alleged in the model—because his ATV had a larger gap between the exhaust and the engine than others. And Appellants' own briefing before the district court acknowledges only that the "the high [exhaust gas temperatures] and low clearance create melt *risks* to the ATV and burn *risks* to the rider." D. Ct. Dkt. 335 at 30 (emphasis added). But "[i]t is not enough to allege that a product line contains a defect or that a product is *at risk* for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) (emphasis added).

Appellants try to reframe the issue by saying that there is an inherent heat defect common to all Polaris ATVs. This misses the mark. That ATVs run "hot" is not the subject of our inquiry; what matters is whether the heat caused injury. *Zurn* helps demonstrate. There, we found homeowners who had brass fittings installed in their pipes had standing. 644 F.3d at 617. But the fact that the pipe fittings were made of brass was inconsequential. *Id.* What mattered was that the fittings developed cracks "as soon as they [were] exposed to domestic water." *Id.* In the same way, we care little about the temperatures in the ATVs—whether five or five hundred degrees hotter. Of course, increased temperatures lead to greater risks of injury. But even if the ATVs run "hot," Article III standing will only rest on the actual injury Polaris owners suffer when they use their vehicles at high temperatures.

Appellants' attempt to sidestep the manifest defect rule fails. They say that the manifest defect line of cases is inapposite because they can show economic injury by the mere fact that they paid an inflated purchase price. They also claim the average ATV buyer would not pay the sticker price if they knew how hot the engine ran. In other words, because some buyers did not receive the benefit of the bargain, all buyers should have paid less for their ATVs. And because all class members paid sticker price, all class members suffered an economic injury. At its core, Appellants' argument is that purchasers without manifest defects should be able to piggyback on

-8-

the injury caused to those with manifest defects. That theory is in direct conflict with the manifest defect rule and does not create an Article III injury-in-fact. *See, e.g.*, *O'Neil*, 574 F.3d at 504 ("[B]ecause the O'Neils' crib has not exhibited the alleged defect, they have necessarily received the benefit of their bargain.").

In this circuit, plaintiffs claiming economic injury do not have Article III standing in product defect cases unless they show a manifest defect. Some class members cannot. Because the class has not been "defined in such a way that anyone within it would have standing," the class cannot be certified. *Avritt*, 615 F.3d at 1034 (citation omitted).[3]

## IV.

The district court's denial of the motion for class certification is affirmed.

KELLY, Circuit Judge, concurring in the judgment.

I concur in the judgment because I agree the district court did not abuse its discretion in denying class certification. Yet I write separately to express my view that the plaintiffs nevertheless had standing to pursue their claims on behalf of the proposed class.

---

[3]The separate opinion says that we have required every plaintiff to submit evidence of their individual standing. Not so. Instead, we merely conclude that a class cannot be certified where it is defined in such a way to include individuals who lack standing. The class here included *all* Polaris purchasers. Admissible evidence showed that the increased temperatures do not produce manifest defects in all Polaris vehicles. To comply with the rule in our circuit, a properly drawn class could only include those members that have suffered a manifest defect. *See Forrest v. Polaris Ind.*, ___ F.4th ___ (8th Cir. August 16, 2021). We recognize this may present other challenges. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) (remanding to district court to consider whether individual fact questions over standing would predominate under Rule 23(b)(3)). We need not address those today.

The Supreme Court has said that whether a suit is a class action "adds nothing to the question of standing." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 n.6 (2016) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 40 n.20 (1976)). "The requirements for standing do not change in the class action context," and a class action "can proceed as long as one named plaintiff has standing." In re SuperValu, Inc., 870 F.3d 763, 768 (8th Cir. 2017); see 1 William B. Rubenstein, Newberg on Class Actions § 2:1 (5th ed. 2012) ("Once threshold individual standing by the class representative is met . . . there is no further, separate 'class action standing' requirement."). Accordingly, whether "the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue." Lewis v. Casey, 518 U.S. 343, 395–96 (1996) (Souter, J., concurring in part, dissenting in part, and concurring in the judgment) (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 2.07 (3d ed. 1992)). Rather, it "depends . . . on meeting the prerequisites of Rule 23 governing class actions." Id. (cleaned up).

In my view, to conclude that the plaintiffs lack standing simply because there is no evidence that all potential class members experienced the alleged heat defect is to conflate the requirements for standing with those for class certification. We previously held in Avritt v. Reliastar Life Insurance Company, 615 F.3d 1023 (8th Cir. 2010) that "a class cannot be certified if it contains members who lack standing." Id. at 1034 (citing Denney v. Deutsche Bank AG, 443 F.3d 253, 263–64 (2d Cir. 2006)). But to my knowledge we have never required potential class members to submit *evidence* of their standing "so long as every class member contemplated by the class definition can *allege* standing." In re Deepwater Horizon, 739 F.3d 790, 804 (5th Cir. 2014) (cleaned up); see Denney, 443 F.3d at 263 ("We do not require that each member of a class submit evidence of personal standing.").

Here, the plaintiffs allege that the ATVs "have a common design defect that makes them dangerous to ride." Am. Compl. ¶ 2. They further assert that the ATVs' exhaust pipes heat up and cause vehicle components to melt, exposing riders "to temperatures up to nearly 250 °F" and potential burns. Id. The named plaintiffs

claim to have experienced this defect in the ATVs they purchased.  See id. ¶ ¶ 44–70.  This is sufficient to establish their standing to pursue claims on behalf of the class.  See In re SuperValu, 870 F.3d at 768.  Further, because the plaintiffs allege that all of the ATVs at issue suffered from this common defect, they have, in my view, defined the proposed class "in such a way that anyone within it would have standing."  Avritt, 615 F.3d at 1034 (quoting Denney, 443 F.3d at 264); see Stuart v. State Farm Fire and Cas. Co., 910 F.3d 371, 377 (8th Cir. 2018) ("Whether some plaintiffs [or class members] are unable to prove damages . . . is a merits question, and the district court has the power to amend the class definition at any time before judgment.").

_____